# BLAIR *v.* UNITED STATES.

# TEMPLETON *v.* UNITED STATES.

# PHILLIPS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

# BLAIR *v.* UNITED STATES ET AL.

# TEMPLETON *v.* UNITED STATES ET AL.

# PHILLIPS *v.* UNITED STATES ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Nos. 763–768. Argued January 28, 1919.—Decided June 2, 1919.

It is the duty of this court to refrain from passing upon the constitutionality of an act of Congress when the interests of the party attacking it do not entitle him to raise the question. P. 278.

*Held,* that witnesses subpœnaed in a grand jury investigation of possible violations of the Corrupt Practices Act of June 25, 1910, as amended, and of possible perjury in connection therewith, had no standing to question the power of Congress, under Art. I, § 4, of the Constitution, to enact provisions for regulation and control of primary elections of candidates for the office of United States Senator. P. 279.

Under the Fifth Amendment and the legislation of Congress, a federal

grand jury has a broad power of investigation and inquisition; the scope of its inquiries is not to be narrowly limited by questions of propriety or forecasts of probable results; the examination of witnesses need not be preceded by a formal charge against a particular individual; and witnesses, duly subpœnaed, must attend and answer the questions propounded in the inquiry, subject to the right to be protected from self-incrimination, and excluding matters specially privileged by law.  P. 281.

A witness summoned to give testimony before a grand jury in the District Court is not entitled to refuse to answer, when ordered by the court, upon the ground that the court and jury are without jurisdiction over the supposed offense under investigation.  P. 282.

253 Fed. Rep. 800, affirmed.

THE cases are stated in the opinion.

*Mr. Martin W. Littleton*, with whom *Mr. Owen N. Brown* was on the brief, for plaintiffs in error and appellants, in support of the proposition that Congress has no power to regulate and control primary elections for candidates for the office of United States Senator, cited: *United States* v. *Anthony*, 11 Blatchf. 200, 205; *United States* v. *Cruikshank*, 92 U. S. 542; *Minor* v. *Happersett*, 21 Wall. 162; Black, Constitutional Law, 145; *United States* v. *Gradwell*, 243 U. S. 476, 481; *United States* v. *O'Toole*, 236 Fed. Rep. 993; Hamilton, Federalist, Essay 59, p. 448; Luther Martin's "Genuine Information," Farrand's Records of Federal Convention, vol. 3, pp. 194, 195; Rufus King, in Massachusetts Convention, *id.*, p. 267; James Madison, in Virginia Convention, *id.*, pp. 311, 319; William R. Davie, in North Carolina Convention, *id.*, pp. 344, 345; Roger Sherman, in House of Representatives, *id.*, p. 359.  Also, *Ledgerwood* v. *Pitts*, 122 Tennessee, 570; *State* v. *Simmons*, 117 Arkansas, 159; *Montgomery* v. *Chelf*, 118 Kentucky, 766; *Hager* v. *Robinson*, 154 Kentucky, 489; *State ex rel. Von Stade* v. *Taylor*, 220 Missouri, 618; *State* v. *Nichols*, 50 Washington, 508; *Gray* v. *Seitz*, 162 Indiana, 1; *Kelso* v. *Cook*,

184 Indiana, 173; *State* v. *Erickson*, 119 Minnesota, 152; *Leu* v. *Montgomery*, 31 N. Dak. 1; *State* v. *Michel*, 121 Louisiana, 374; *Riter* v. *Douglass*, 32 Nevada, 400.

If the Federal Corrupt Practices Act is unconstitutional so far as it relates to primary elections, then neither the United States district court nor the grand jury had jurisdiction to inquire into primary elections, or to indict or try anyone for any offense based on the unconstitutional provisions of the statute, and therefore the order committing appellants is null and void. The federal grand jury is merely an accessory to the criminal jurisdiction of the United States district court, as the power and authority of that court in criminal matters can be exercised only through the instrumentality of the grand jury. See opinion of Chief Justice Marshall, in *United States* v. *Hill*, 1 Brock. 156, 160.

It appears affirmatively from the record in this case that the subject-matter which the grand jury was investigating related to the verification of a financial statement on the subject of primary elections, made pursuant to the requirements of the Corrupt Practices Act—a subject-matter that could not, under any circumstances, constitute a crime cognizable by the United States district court for the Southern District of New York or by any other United States court. The federal grand jury can investigate only crimes cognizable by the United States district court. *Hale* v. *Henkel,* 201 U. S. 43, 65. It could no more investigate perjury committed under such circumstances than it could investigate the crime of murder committed in violation of the laws of the State of New York. The entire proceedings were *coram non judice. In re Bonner*, 151 U. S. 242; *People* v. *Knatt*, 156 N. Y. 302, 307; *Norton* v. *Shelby County*, 118 U. S. 425, 442; *Chicago, Indianapolis & L. Ry. Co.* v. *Hackett*, 228 U. S. 560, 566; *Hurtado* v. *California*, 110 U. S. 536; *Huntington* v. *Worthen*, 120 U. S. 101;

*Ex parte Siebold,* 100 U. S. 371; *In re Sawyer,* 124 U. S. 200; *Holman* v. *Mayor of Austin,* 34 Texas, 668; *Interstate Commerce Commission* v. *Brimson,* 154 U. S. 447, 479.

*Mr. Assistant Attorney General Porter,* with whom *Mr. W. C. Herron* and *Mr. H. S. Ridgely* were on the brief, for the United States.

MR. JUSTICE PITNEY delivered the opinion of the court.

Three of these cases come here on writs of error, the other three on appeals. The writs bring up final orders adjudging plaintiffs in error guilty of contempt of court because of their refusal to obey an order directing them to answer certain questions asked of them before a federal grand jury, and committing them to the custody of the United States marshal until they should comply. The appeals bring under review final orders discharging writs of habeas corpus sued out by appellants to review their detention under the original orders of commitment and remanding them to the custody of the marshal. Blair, Templeton, and Phillips are plaintiffs in error, as well as appellants.

It appears that in October, 1918, the federal grand jury of the Southern District of New York was making inquiry concerning supposed violations of § 125 of the Criminal Code (relating to perjury) and of the so-called Corrupt Practices Act of June 25, 1910, c. 392, 36 Stat. 822, as amended, in connection with the verification and filing in that district of reports to the Secretary of the Senate of the United States made by a candidate for nomination as Senator at a primary election held in the State of Michigan on August 27, 1918. Phillips was served with a subpœna requiring him to appear and testify before this grand jury. Blair and Templeton

were subpœnaed to appear and testify and also to produce certain records, correspondence, and other documentary evidence. All were served in the State of Michigan. They appeared before the grand jury in response to the subpœnas, were severally sworn, and were examined by counsel for the United States. Each witness, after answering preliminary questions, asked that he be informed of the object and purpose of the inquiry and against whom it was directed, whereupon he was informed by counsel for the United States that the inquiry was not directed against him (the witness). After this each witness read to and left with the grand jury a typewritten statement to the effect that upon advice of counsel he refused to answer any questions pertaining to the matter under inquiry, for the reason that the grand jury and the court were without jurisdiction to inquire into the conduct of a campaign in Michigan for the primary election of a United States Senator; that the Federal Corrupt Practices Act as amended was unconstitutional; and that no federal court or grand jury in any State had constitutional authority to conduct an inquiry regarding a primary election for United States Senator. Thereupon each witness was asked by counsel for the United States whether he refused to testify for the reason that to do so would incriminate him, to which he made no other answer than to refer to the reasons for his refusal as set forth in his statement.

The grand jury made a written presentment of these facts to the district court, with a prayer that the parties named might be dealt with as contumacious witnesses.

Upon the coming in of the presentment the witnesses appeared in person and by counsel in opposition to the petition of the grand jury and contended that the Corrupt Practices Act as amended was unconstitutional and void, referring to the opinion of this court in *United States* v. *Gradwell*, 243 U. S. 476, 487. A hearing was had which

went to the merits; the minutes of the grand jury were
read and made a part of the presentment; and the matter
was fully argued.. At the conclusion of the hearing the
court directed the witnesses to answer the questions
propounded to them before the grand jury. They were
again called, were asked the same questions, and again
refused to answer for the same reasons before assigned.
The grand jury immediately made a further present-
ment, whereupon the court, after hearing the parties,
adjudged appellants guilty of contempt because of their
refusal to comply with the order of the court, and re-
manded them to the custody of the marshal until they
should comply. ·

Being in his custody, each of them presented to the
district court a petition for a writ of habeas corpus; the
writ was allowed, returnable forthwith; and the United
States district attorney, in behalf of the marshal, made
a motion to dismiss the writ, in effect a demurrer to the
petition for insufficiency. After hearing, the court dis-
charged the writ and remanded each of the petitioners
to the custody of the marshal (253 Fed. Rep. 800); and
the present writs of error and appeals were allowed.

The principal contention is that the Act of June 25,
1910, c. 392, 36 Stat. 822, and its amendments (Act of
August 19, 1911, c. 33, 37 Stat. 25; Act of August 23,
1912, c. 349, 37 Stat. 360) are unconstitutional in so far
as they attempt to regulate and control the selection by
political parties at primary elections of candidates for
United States Senator to be voted for at the general
elections; it being insisted that the authority of Congress
under § 4 of Art. I of the Constitution extends only to
the definitive general election and not to preëlection
arrangements or devices such as nominating conventions
and primaries.

It is maintained further that, because of the invalidity
of these statutes, neither the United States district court

nor the federal grand jury has jurisdiction to inquire into primary elections or to indict or try any person for an offense based upon the statutes, and therefore the order committing appellants is null and void.

The same constitutional question was stirred in *United States* v. *Gradwell*, 243 U. S. 476, 487, but its determination was unnecessary for the decision of the case, and for this reason it was left undetermined, as the opinion states. Considerations of propriety, as well as long-established practice, demand that we refrain from passing upon the constitutionality of an act of Congress unless obliged to do so in the proper performance of our judicial function, when the question is raised by a party whose interests entitle him to raise it.

We do not think the present parties are so entitled, since a brief consideration of the relation of a witness to the proceeding in which he is called will suffice to show that he is not interested to challenge the jurisdiction of court or grand jury over the subject-matter that is under inquiry.

Long before the separation of the American Colonies from the mother country, compulsion of witnesses to appear and testify had become established in England. By Act of 5 Eliz., c. 9, § 12 (1562), provision was made for the service of process out of any court of record requiring the person served to testify concerning any cause or matter pending in the court, under a penalty of ten pounds besides damages to be recovered by the party aggrieved. See *Havithbury* v. *Harvey*, Cro. Eliz. 130; 1 Leon. 122; *Goodwin* (or *Goodman*) v. *West*, Cro. Car. 522, 540; March, 18. When it was that grand juries first resorted to compulsory process for witnesses is not clear. But as early as 1612, in the Countess of Shrewsbury's case, Lord Bacon is reported to have declared that "all subjects, without distinction of degrees, owe to the King tribute and service, not only of their deed

and hand, but of their knowledge and discovery." 2 How. St. Tr. 769, 778. And by Act of 7 & 8 Wm. III, c. 3, § 7 (1695), parties indicted for treason or misprision of treason were given the like process to compel their witnesses to appear as was usually granted to compel witnesses to appear against them; clearly evincing that process for crown witnesses was already in familiar use.

At the foundation of our Federal Government the inquisitorial function of the grand jury and the compulsion of witnesses were recognized as incidents of the judicial power of the United States. By the Fifth Amendment a presentment or indictment by grand jury was made essential to hold one to answer for a capital or otherwise infamous crime, and it was declared that no person should be compelled in a criminal case to be a witness against himself; while, by the Sixth Amendment, in all criminal prosecutions the accused was given the right to a speedy and public trial, with compulsory process for obtaining witnesses in his favor. By the first Judiciary Act (September 24, 1789, c. 20, § 30, 1 Stat. 73, 88), the mode of proof by examination of witnesses in the courts of the United States was regulated, and their duty to appear and testify was recognized. These provisions, as modified by subsequent legislation, are found in §§ 861–865, Rev. Stats. By Act of March 2, 1793, c. 22, § 6, 1 Stat. 333, 335, it was enacted that subpœnas for witnesses required to attend a court of the United States in any district might run into any other district, with a proviso limiting the effect of this in civil causes so that witnesses living outside of the district in which the court was held need not attend beyond a limited distance from the place of their residence. See § 876, Rev. Stats. By § 877, originating in Act of February 26, 1853, c. 80, § 3, 10 Stat. 161, 169, witnesses required to attend any term of the district court on the part of the United States may be subpœnaed to attend to testify

generally; and under such process they shall appear before the grand or petit jury, or both, as required by the court or the district attorney. By the same Act of 1853 (10 Stat. 167, 168), fees for the attendance and mileage of witnesses were regulated; and it was provided that where the United States was a party the marshal on the order of the court should pay such fees. Rev. Stats., §§ 848, 855. And §§ 879 and 881, Rev. Stats., contain provisions for requiring witnesses in criminal proceedings to give recognizance for their appearance to testify, and for detaining them in prison in default of such recognizance.

In all of these provisions, as in the general law upon the subject, it is clearly recognized that the giving of testimony and the attendance upon court or grand jury in order to testify are public duties which every person within the jurisdiction of the Government is bound to perform upon being properly summoned, and for performance of which he is entitled to no further compensation than that which the statutes provide. The personal sacrifice involved is a part of the necessary contribution of the individual to the welfare of the public. The duty, so onerous at times, yet so necessary to the administration of justice according to the forms and modes established in our system of government (*Wilson* v. *United States*, 221 U. S. 361, 372, quoting Lord Ellenborough), is subject to mitigation in exceptional circumstances; there is a constitutional exemption from being compelled in any criminal case to be a witness against oneself, entitling the witness to be excused from answering anything that will tend to incriminate him (see *Brown* v. *Walker*, 161 U. S. 591); some confidential matters are shielded from considerations of policy, and perhaps in other cases for special reasons a witness may be excused from telling all that he knows.

But, aside from exceptions and qualifications—and

none such is asserted in the present case—the witness is bound not only to attend but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry.

He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his. *Nelson* v. *United States,* 201 U. S. 92, 115.

On familiar principles, he is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization.

He is not entitled to set limits to the investigation that the grand jury may conduct. The Fifth Amendment and the statutes relative to the organization of grand juries recognize such a jury as being possessed of the same powers that pertained to its British prototype, and in our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. *Hale* v. *Henkel,* 201 U. S. 43, 65. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. *Hendricks* v. *United States,* 223 U. S. 178, 184.

And, for the same reasons, witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation. In truth it is in the ordinary case no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not. At

least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine the question whether the facts show a case within their jurisdiction.

The present cases are not exceptional, and for the reasons that have been outlined we are of opinion that appellants were not entitled to raise any question about the constitutionality of the statutes under which the grand jury's investigation was conducted.

*Final orders affirmed.*