Edward F. WEINHEIMER, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 15698.

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 13, 1960.

Decided Oct. 20, 1960.

Mr. H. Clifford Allder, Washington, D. C., with whom Mr. Kenneth D. Wood, Washington, D. C., was on the brief, for appellant.

Mr. Paul J. Komives, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Malcolm R. Wilkey, and Messrs. Oliver Gasch, U. S. Atty., and Plato C. Cacheris, Atty., Dept. of Justice, were on the brief, for appellee.

Mr. Carl W. Belcher, Asst. U. S. Atty., also entered an appearance for appellee.

Before WASHINGTON, BASTIAN and BURGER, Circuit Judges.

BASTIAN, Circuit Judge.

Appellant was indicted, tried and convicted of the crime of perjury arising from his testimony before a Federal grand jury which had before it an investigation of possible violations of the laws relating to interstate commerce. [49 Stat. 565, and amendments thereto.] 49 U.S.C.A. § 323. The grand jury was particularly inquiring into the accuracy of certain financial statements filed by Exhibitor's Service Co., Inc. [Esco] with the Interstate Commerce Commission, of which Esco is a licensee.

Callahan, president of Esco, testified that appellant was originally employed as a solicitor and subsequently became an executive of the company; that on two occasions, when Esco was threatened with union difficulties, he had been instructed by appellant to send him $1,000 in cash, and that appellant had refused to divulge the use to which he planned to put the money. Callahan further testified that on each occasion he had acceded to appellant's request and that, in each instance, an impending strike was cancelled.

Callahan stated that in August 1957, upon appellant's instructions, he had caused Lacey, bookkeeper for Esco, to make out a company check for $1,000, to cash the check and to return the cash to him; that he [Callahan] then placed the cash in three separate envelopes addressed to appellant and gave the envelopes to Lacey with instructions to send them by registered mail. This entire procedure was verified by Lacey, except that Lacey did not actually see Callahan place the money in the envelopes. Post office officials confirmed the fact that three pieces of registered mail were sent by Esco to appellant on the date claimed by Callahan and were signed for by appellant. Another witness testified that he had seen appellant receive and sign for the registered mail but that he had not seen the contents.

Similar actions were testified to in connection with the second $1000 sent to appellant in September 1957.

Both Callahan and Lacey were questioned by the grand jury as to how these two items were recorded in the books of the company. They testified that they were charged to "solicitor's expenses," although usually appellant submitted vouchers for his expenses and was then reimbursed by check.

When appellant was questioned by the grand jury, he denied receiving the two $1000 items, by registered mail or otherwise, from Esco or any of its officers. The indictment was based on this denial, which was reiterated in response to varying questions.

Appellant vigorously presses on us a number of grounds for reversal. First, he urges that the alleged perjured testimony was not material to the grand jury investigation, which he claims was for the purpose of ascertaining whether Esco and Callahan had violated the rules of the Interstate Commerce Commission by filing falsified reports. He claims that

the admissions of Callahan and Lacey had already furnished the grand jury with ample evidence of such violation. Second, appellant urges that a perjury conviction cannot be founded upon the uncorroborated testimony of a single witness, and that the record in the instant case is devoid of legally sufficient corroborating evidence. Third, appellant points out that an agent of the Federal Bureau of Investigation, a trained accountant, was permitted to testify, over objection, as to the meaning of an account number in Esco's books and as to an Interstate Commerce Commission regulation requiring such an account to be kept.

We think that appellant's claim of immateriality is based on a misconception of the nature of the grand jury investigation. Appellant points to the fact that the grand jury already had before it ample evidence to establish a false reporting violation. Even putting aside the fact that appellant's testimony as to the actual use of the money might have established that the report was correct, appellant's argument assumes that the grand jury was confined in its investigation to matters pertaining to violations of statutes relating to the Interstate Commerce Commission. This is not the case.

In Blair v. United States, 1918, 250 U. S. 273, 39 S.Ct. 468, 63 L.Ed. 979, the Supreme Court held that grand jury investigations are not to be narrowly limited by forecasts of probable results; and, in Sullivan v. United States, 1954, 348 U.S. 170, 173, 75 S.Ct. 182, 184, 99 L.Ed. 210, that Court referred to the "well-recognized power of the grand jury to consider and investigate any alleged crime within its jurisdiction." The fact that appellant, at the time the money was received by him, was stopping at the same hotel as were certain union officers with whom he was acquainted, could reasonably have impelled the grand jury to search for possible violations of the Taft-Hartley Act, 29 U.S.C.A. § 186, or the Anti-Racketeering Act, 18 U.S.C. § 1951.

Appellant's claim that the Government failed to satisfy the stringent requirements of the law as to proof of perjury must also fail. Circumstantial evidence is sufficient when it tends to support the witness directly and in important respects. Cook v. United States, 1906, 26 App.D.C. 427; see also Weiler v. United States, 1945, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495; Doto v. United States, 1955, 96 U.S.App.D.C. 17, 223 F. 2d 309. In the case before us, the corroborating evidence supports Callahan's testimony in every detail except for the actual observation of Callahan's placing of the cash in the envelopes. On this point, Lacey testified that in August 1957, within a very few minutes after he had cashed the checks and given the proceeds to Callahan, he was given the sealed envelopes by Callahan for registered mailing. We think there was sufficient corroboration, particularly since the only explanation by appellant of the contents of the registered mail received by him was that all of the envelopes contained checks. As a matter of fact, the only checks issued to him by Esco or Callahan in August were variously dated, rather than on the same day, and all of the checks bore dates subsequent to the date on which appellant received the first set of registered mail.[1] The two occasions in question were the only times that registered envelopes were mailed to appellant on the same days. As in Doto v. United States, supra, the evidence here was not merely the oath of one person but was, as well, cumulative evidence which met the standards applicable to perjury cases.

---

1. Appellant did not testify at the trial. In his testimony before the grand jury he stated that on the first occasion when he received registered mail from Esco, August 15, 1957, in Des Moines, the envelopes contained salary and expense checks. The checks which he identified as having been received by him at that time were dated August 17, 23, 24 and 30, respectively, and he denied receiving any three of the checks on the same day. Appellant also emphatically denied receiving any cash by registered mail.

As to the testimony of the agent of the Federal Bureau of Investigation, appellant does not challenge the correctness of the testimony, nor does he assert that his case would have been furthered in even the smallest particular had the regulation in question been proved, as he asserts it should have been, by an Interstate Commerce Commission official. Therefore, even if we were to find error on this point, it would be harmless.

We have examined the other errors asserted by appellant and find no error.

Affirmed.