**In the Matter of Robert W. COMEGNA, A Witness Before the President's Commission On Organized Crime.**

**Misc. No. 84–M57.**

United States District Court, S.D. New York.

Oct. 23, 1984.

---

Stephen M. Ryan, Deputy Counsel, President's Com'n on Organized Crime, New York City; James D. Harmon, Jr., Executive Director and Chief Counsel, Jonathan J. Rusch, Thomas P. McNulty, Deputy Counsel, President's Commission on Organized Crime, New York City, of counsel.

Ivan S. Fisher, Fisher & Ely, P.C., New York City, for Robert Comegna.

ROBERT L. CARTER, District Judge.

Robert W. Comegna was subpoened on September 28, 1984, by the President's Commission on Organized Crime to give testimony in a closed deposition. At the deposition Comegna, asserting his 5th amendment privilege against self-incrimination and 4th amendment claim that the testimony which was sought constituted the fruits of illegally seized evidence and should be suppressed, refused to testify.

Application was made to the Attorney General pursuant to 18 U.S.C. § 6004 for authority to grant Comegna immunity as provided in 18 U.S.C. § 6002 in return for his testimony. Such authority has been granted, and the court signed an order on October 17, 1984, compelling Comegna's testimony. Thus his 5th amendment claim has been vitiated.

Comegna still asserts his 4th amendment claim. He seeks to quash the Commission's subpoena or, in the alternative, requests an order denying the Commission's application that Comegna be held in contempt for refusing to honor the subpoena pending a hearing to determine whether the circumstances surrounding the seizure of various documents belonging to Comegna which are, at least in part, the basis of the Commission's interest in his testimony, warrant application of the 4th amendment exclusionary rule to prohibit the Commission from being allowed to question Comegna about the documents or any matter relative thereto.

The President's Commission on Organized Crime came into being on July 28, 1983, pursuant to Executive Order 12435. The Commission's function is to undertake a "complete national and region by region analysis of organized crime," define its nature, the sources and amounts of its income, and the uses to which the income is put, obtain information on participants in organized crime networks and evaluate the efficacy of federal laws designed to combat organized crime. The Commission is to present its findings and recommendations for administrative and legislative improve-

ments in the administration of justice to the President and Attorney General. Executive Order 12435, § 2(a), 48 Fed.Reg. 34723 (1983). Pursuant to Pub.L. 96–368, 94 Stat. 1347 (1984), the Commission has been granted the power to hold hearings, to compel the attendance and testimony of witnesses, and to compel production of information to enable the Commission to complete its task. At present, the Commission is due to expire on July 28, 1985, unless its term is extended. The Commission is planning to hold hearings in New York beginning on October 23, 1984.

On December 9, 1981, Comegna left a briefcase in a supermarket in San Diego, California. An employee found the briefcase, opened it to ascertain ownership and found that it contained $8,000 in cash, checks from various individuals to Comegna's order totalling in excess of $350,000, a bank statement of October, 1981, for a Citibank checking account in the name of Comegna's wife, a list of six Japanese names with accompanying financial notations, a personal telephone book and diary covering the period October 5, 1981, to December 6, 1981.

The briefcase was turned over to the San Diego Sheriff's Department. The police, in light of the cash involved, turned the briefcase over to the Department's Narcotic Task Force. The Commission states that Comegna did not contact the police until December 11. Comegna contends that he returned to the supermarket later that day and was told that the briefcase had been turned over to the police. He states that he went personally to the precinct that next morning, was told the briefcase was not there and to call back at 5:30 p.m. He returned at 5:00 p.m. but was told the briefcase was in the main office and that it was now too late to retrieve his property that day, and he was requested to return the next day. On his return to the sheriff's office the following morning, he was told that the officer who was supposed to bring the briefcase from the main office was out sick, and thus he would have to return the next day to get his briefcase. He returned the next morning and was given another

excuse. Finally, the briefcase was returned to him at 5:00 p.m. on December 12, roughly some 60 hours after he had first appeared at the precinct to secure the return of his briefcase.

Comegna contends that in this interval, while he was being denied the return of his property, the San Diego police were making copies of the contents of the briefcase at the direction of federal authorities from the Eastern District of New York. He contends that a hearing will establish that agents from the IRS, Criminal Tax Division or representatives of the United States Attorney for the Eastern District of New York were responsible for the delayed return to Comegna of his briefcase and that they caused San Diego authorities to copy all the contents.

This contention certainly is not lacking in plausibility. In any event, federal authorities in the Eastern District came into possession of every document in the briefcase. Possession of these documents resulted in a grand jury investigation into Comegna's affairs. The investigation revealed that Comegna operated a blackjack game exclusively for Japanese businessmen. On May 12, 1983, a two count information was filed against him charging him with participating in an extortionate credit transaction, 18 U.S.C. § 894(a)(1), and evading income tax, 26 U.S.C. § 7201. Comegna pled guilty to those charges before Judge Mishler on July 27, 1983, and was sentenced to serve a prison term of one year and one day. He surrendered to authorities and completed service of his sentence before this proceeding began.

There was no attempt to test the application of the exclusionary rule in the grand jury proceedings in the Eastern District. Nor was the issue raised in reference to the validity of the information. Counsel for Comegna states that he had extensive discussions about the 4th amendment issue with the Assistant United States Attorney in the Eastern District and a special agent who apparently had charge of the Comegna case. Counsel states that in these discus-

sions the Assistant United States Attorney argued that he could prove his case through independent witnesses and that the taint from the unlawful search was attenuated. After discussion with Comegna, a decision was made to waive indictment and plead guilty to the information.

The documents which are the subject of the present proceeding were, according to Comegna, grand jury exhibits in the Eastern District's investigation. These documents or photocopies were somehow secured by the Commission. The Commission's papers are silent about how it came into possession of the documents, and it contends that the lawfulness of the search of the briefcase is irrelevant. It argues that invocation of the exclusionary rule under the present circumstances should not be permitted. The reason given is that to allow Comegna to litigate this issue would seriously impede the Commission's work. In sum, the Commission seeks a ruling that the exclusionary rule is not applicable to it for the same reasons it was found not applicable to grand jury proceedings in *United States v. Calandra,* 414 U.S. 338, 342–352, 94 S.Ct. 613, 617–622, 38 L.Ed.2d 561 (1974).

A Commission, albeit a presidential one, cannot be equated with a grand jury. It has none of the traditions that the grand jury has held in the Anglo-American criminal justice systems. The grand jury's genesis in England was two-fold, both to discover and bring to trial persons suspected of crime and to protect citizens against governmental arbitrariness and caprice. *See e.g. Costello v. United States,* 350 U.S. 359, 361–362, 76 S.Ct. 406, 407–408, 100 L.Ed. 397 (1966); *Blair v. United States,* 250 U.S. 273, 279–83, 39 S.Ct. 468, 470–471, 63 L.Ed. 979 (1919); *Hale v. Henkel,* 201 U.S. 43, 59, 26 S.Ct. 370, 372, 50 L.Ed. 652 (1906), for a discussion of the history and role of the grand jury. While the Commission's task is undoubtedly important and indeed vital, the rationale that screens a grand jury proceeding from imposition of the exclusionary rule cannot undergird a finding that the Commission must be similarly protected. As a general proposition, I

would think the 4th amendment's exclusionary rule would be applicable to the Commission under proper circumstances absent an express judicial holding exempting it from the rule's reach, as the Court did in *United States v. Calandra* in re the grand jury. Nonetheless, I do not find a basis for quashing the subpoena in this case.

Whatever its antecedents, *see United States v. Calandra,* 414 U.S. *supra,* 354–367, 94 S.Ct. supra, 622–629 (Justice Brennan's dissenting); *Tirado v. Commissioner of Internal Revenue,* 689 F.2d 307, 315–317 (2d Cir.1982) (Judge Oake's dissenting), the primary, if not sole, purpose of the exclusionary rule "is to deter unlawful police conduct." *United States v. Janis,* 428 U.S. 433, 446, 96 S.Ct. 3021, 3028, 49 L.Ed.2d 1046 (1976), *citing United States v. Calandra* 414 U.S. at 347, 94 S.Ct. at 619. In that case the local officer relied in good faith on a warrant, later proved to be defective, to seize evidence which was turned over to federal authorities. The issue was whether this evidence should be held inadmissible in a federal civil tax proceeding. The court answered in the negative. It concluded that since deterrence was the reason for the rule, such deterrence is highly attenuated "when the 'punishment' imposed upon the offending criminal enforcement officer is the removal of that evidence from a civil suit by or against a different sovereign." *United States v. Janis,* 428 U.S. *supra* at 458, 96 S.Ct. supra at 3034.

The facts alleged by Comegna, however, do not fit the *Janis* model. *Janis* was decided on the assumption that there was no agreement by federal authorities with the officer committing the unconstitutional search to get the evidence for them or turn it over to them and no participation by federal officials in the unconstitutional search. *Id.* at 451 n. 31, 96 S.Ct. at 3033 n. 31. The situation of local and federal collusion or cooperation in the illegal seizure was left undecided.

However, that gap has now been closed at least in this circuit. In *Tirado v. Commissioner of Internal Revenue*, 689 F.2d 307 (1982), two federal agents and two police officers of a joint law enforcement unit composed of federal and local officers entered plaintiff's apartment and seized various documents. The federal officials involved met with IRS officials and disclosed the results of the search. The IRS used the information to reconstruct Tirado's income and to issue a notice of tax deficiency based on its calculations. Tirado petitioned the United States Tax Court to redetermine the deficiency on the ground that it was based on illegally obtained evidence since the items seized were not covered by the warrant. The tax court ruled that the language of the warrant was sufficient to authorize the seizure and upheld the deficiency determination.

The Court of Appeals affirmed holding that the fact that the evidence was seized in violation of the 4th amendment did not require that it be suppressed in a civil tax court proceeding. It reasoned that the closer the nature of the proposed use is to the seizing officers' "zone of primary interest", the stronger is the inference that the officer had the use in mind. The court reasoned that local police officers looking for gambling violations are not likely to be motivated by a desire to aid federal tax authorities in winning a deficiency judgment against the person from whom the evidence is seized, *id.* at 311; and that tax deficiency proceedings are too remote from the zone of primary interest of the narcotics agents who made the seizure for any deterrence to be effected by applying the rule. It was considered unreasonable to assume that a ruling barring use of the evidence in a civil tax proceeding would have materially influenced the agents' decision whether to make the particular seizures. *Id.* at 314.

This reasoning points squarely to determination in this case. Assuming that the San Diego police, in agreement with federal authorities in the Eastern District, unlawfully kept possession of Comegna's briefcase so that all of its contents could be photocopied and turned over to federal law enforcement authorities in the Eastern District of New York, it is not reasonable to assume that the conduct of the San Diego police or federal authorities in the Eastern District in 1981 would have been influenced by application of the exclusionary rule to bar the use of the evidence by a President's Commission on Organized Crime in 1984.

Law enforcement officials would have little interest one way or another with proceedings by such an agency. Their concern is with detection and prosecution of criminal acts—not with a study group which proposes to generate information for the public on organized crime. Moreover, the Commission was not even in existence when the unlawful seizure of Comegna's papers took place. There is no warrant, therefore, for applying a rule of deterrence to bar the President's Commission from obtaining Comegna's testimony.

Execution is stayed for 24 hours, that is until noon on October 24, 1984, to enable the witness to get the issue before the Court of Appeals.

IT IS SO ORDERED.