**UNITED STATES of America, Plaintiff,**

v.

**Luis ARANA, Jose Alberto Reyes, Lorenzo Domingas, and Gilberto Felipe Hernandez, Defendants.**

No. 95–CR–80272.

United States District Court,
E.D. Michigan,
Southern Division.

July 24, 1998.

Michael Stern, Wayne F. Pratt, Office of U.S. Atty, for U.S.A.

Richard Paul Zipser, Bloomfield Hills, MI, for Defendant Arana.

Don Ferris, Ferris & Salter, Ann Arbor, MI, for Defendant Jose Reyes.

Ellen Dennis, Saline, MI, for Defendant Dominguez.

Maria Mannarino, Detroit, MI, for Defendant Hernandez.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO SUPPRESS TESTIMONY

ROSEN, District Judge.

### I. INTRODUCTION

The above-captioned action is presently before the Court on the Motion to Suppress Testimony filed by Defendant Gilberto Felipe Hernandez and joined in by Defendants Luis Arana, Lorenzo Domingas and Jose Alberto Reyes. The Government has responded to Defendants' Motion. The Court has reviewed and considered the parties' briefs, and having discussed Defendants' Motion with counsel at the Status Conference held on July 16, 1998, the Court is now prepared to rule on this matter. This Opinion and Order sets forth the Court's ruling.

### II. FACTUAL BACKGROUND

This is a 17–defendant drug conspiracy/murder for hire action. Thirteen of the defendants named in the indictment have already been tried or have entered guilty pleas. The remaining four defendants—Luis Arana, Jose Alberto Reyes, Lorenzo Domingas and Gilberto Felipe Hernandez (collectively referred to herein as "Defendants")— are awaiting trial which is scheduled to commence on July 22, 1998 before this Court.

On July 9, 1998, Defendants filed the instant Motion to Suppress seeking to preclude the trial testimony of certain witnesses who entered into Rule 11 plea agreements with the Government, including Canelaria DeJe-

sus, Jose Balsce, Cespedes "Angel" Campo, Pascual Alonzo Perez, Alberto "Mickey" Solis, Roberto Perez Herrera and Leonor Espita. A number of these expected witnesses were also named defendants in the instant indictment.[1]

Defendants maintain that the United States has promised these witnesses and other prospective witnesses to move for downward departures from applicable sentencing guidelines, dismiss other charges, not to file subsequent offender notices, and/or apply on the witness's behalf to the Witness Security Program in exchange for their trial testimony in this case. The Government does not dispute that in entering into plea agreements with a number of witnesses in this case it has made such promises. Relying on *U.S. v. Singleton*, 144 F.3d 1343 (10th Cir.1998), *vacated and rehearing en banc granted*, No. 97–3178 (10th Cir., July 10, 1998) (decision noted on WESTLAW), Defendants argue that the Government's promises amount to promises of leniency and, as such, are in violation of subsection (c)(2) of the anti-bribery statute, 18 U.S.C. § 201(c)(2), which prohibits the giving, offering or promising of anything of value to any person in exchange for his or her testimony. They further contend that the appropriate remedy for testimony obtained in violation of § 201(c)(2) is suppression of its use at trial.

### DISCUSSION

#### A. THE STATUTE

18 U.S.C. § 201(c)(2) provides:

**(c)** Whoever—

\*　　\*　　\*　　\*　　\*　　\*

(2) directly or indirectly gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court, . . .

---

1. Witnesses DeJesus, Balsce, Campo, Solis and Herrera are part of this case. They all have pled

guilty pursuant to Rule 11 agreements.

shall be fined under this title or imprisoned for not more than two years, or both.

## B. *THE SINGLETON DECISION*

In *U.S. v. Singleton,* the defendant, Sonya Singleton, was charged with others in a superseding indictment with multiple counts of money laundering and conspiracy to distribute cocaine. Before trial, she moved to suppress the testimony of Napoleon Douglas, a co-conspirator who had entered into a plea agreement with the government. In the plea agreement, Douglas promised to testify in federal and/or state court "in consideration of" the government's promises (1) not to prosecute him for certain offenses; (3) to inform the district court of the nature and extent of the cooperation provided by Douglas prior to sentencing; and (3) to advise the Mississippi state parole board of the nature and extent of cooperation provided.

Singleton argued in her suppression motion that Douglas's testimony would be given in violation of 18 U.S.C. § 201(c)(2) and, therefore, it should be suppressed. The district court denied Singleton's motion and the case proceeded to trial.

Upon the close of proofs, the jury convicted Singleton of one count of conspiracy to distribute cocaine and seven counts of money laundering. She was subsequently sentenced to 46 months imprisonment to be followed by three years supervised release.

Singleton appealed her convictions arguing that the district court erred in denying her motion to suppress testimony.[2] The Tenth Circuit agreed and reversed and remanded the matter for a new trial.[3]

The appellate court first found that the anti-bribery provisions of § 201(c)(2) applied to the Government through its agent, the assistant U.S. attorney who negotiated and agreed to the Rule 11 plea agreement with Napoleon Douglas. The court reasoned, "The anti-gratuity provision of Section 201(c)(2) indicates Congress's belief that justice is undermined by the giving, offering or promising anything of value for testimony. If justice is perverted when a criminal defendant seeks to buy testimony from a witness, it is no less perverted when the government does so." 144 F.3d at 1344–45.

The *Singleton* court further determined the agreement not to prosecute him for certain offenses and the promise to inform the sentencing court and the Mississippi state parole board of the nature and extent of the cooperation provided were "things of value" under the statute because "the obvious purpose of the government's promised actions was to reduce [the testifying co-defendant's] jail time, and it is difficult to imagine anything more valuable than personal physical freedom." *Id.* at 1349–50.

## C. *IN ENTERING INTO PLEA AGREEMENTS, IS THE GOVERNMENT SUBJECT TO THE SECTION 201(c)(2)'s PROHIBITION?*

The Supreme Court has long recognized a canon of construction which provides that statutes which tend to restrain or diminish the powers, rights, or interests of the sovereign do not apply to the government or affect governmental rights unless the text expressly includes the government. *See United States v. Herron,* 87 U.S. (20 Wall.) 251, 256, 22 L.Ed. 275 (1873); *Nardone v. United States,* 302 U.S. 379, 383, 58 S.Ct. 275, 276, 82 L.Ed. 314 (1937). The *Singleton* court acknowledged this rule but determined that it only applied to two classes of statutes, and found that Section 201(c)(2) did not fit in either class.

The "two classes" of cases which the *Singleton* court referred to were discussed

---

**2.** She also argued that district court erred in denying her post-trial motion for judgment of acquittal which was predicated on a theory of insufficiency of the evidence.

**3.** It is unclear why the appellate court remanded the case for a new trial. Although it is true that the court determined that the district court's failure to suppress Mr. Douglas's testimony was not harmless error as to either the conspiracy or the money laundering convictions, 144 F.3d at 1361, it went on to find that, "[c]xcluding the testimony of Mr. Douglas and viewing the remaining evidence and all reasonable inferences from it in the light most favorable to the government... a rational jury could have found Ms. Singleton guilty beyond a reasonable doubt of both the conspiracy and money laundering charges." *Id.*

(briefly) in *Nardone v. U.S., supra.* The first class consists of statutes which, unless the government is exempted, would deprive the sovereign of a recognized or established prerogative title or interest. 58 S.Ct. at 277. The classic example of a statute within this first class is the exemption of the sovereign from statutes of limitations. *Id.* The second class is comprised of those statutes which would create an absurdity if applied to the government, as, for example, a speed limit applied to a policeman pursuing a suspect. *Id.*

The *Singleton* court determined that Section 201(c)(2) did not fit in either of these two classes of statutes.

As an initial matter, this Court believes that the *Singleton* court read *Nardone* too narrowly. *Nardone* does **not** "limit" application of the canon to only the two classes of cases discussed. All that the Court in *Nardone* stated was that the canon "has been applied" to cases which fall into two classes. Nothing in that decision or any other Supreme Court decision **"limits"** application of the canon to *only* the two classes of cases mentioned.

However, even if *Nardone* is read to exempt the Government from coverage of a statute only when these two classes of cases are involved, this Court finds that this case fits squarely within the second class of cases—construing Section 201(c)(2) as argued by Defendants would create an absurdity if applied to federal prosecutors in their negotiation and execution of plea agreements. This "absurdity" is evidenced by the inconsistency that would be exist between Section 201(c)(2) and the federal immunity statute, 18 U.S.C. § 6001–6005, because sections 6001–6005 authorize federal prosecutors to give immunity from prosecution for testimony, while section 201(c)(2) criminalizes offering anything of value for testimony. The *Singleton* court found no inconsistency or absurdity in this because it noted that under

§§ 6001–6005, "the government does not give immunity directly for the witness's testimony; the government may move the court to grant immunity," and it is the court that actually "gives" the immunity. 144 F.3d at 1347–48.

█ In this Court's view, this is no different than a prosecutor moving for a downward departure. The prosecutor is not "giving" anything; in the Rule 11 agreements at issue here, the Government has simply agreed to recommend reduced sentences. It is a matter for *the court* to decide whether or not to "give" the downward departure.[4]

That application of Section 201(c)(2) to federal prosecutors would work an "absurdity" is further demonstrated by the inconsistency that would exist between the anti-bribery statute and the federal sentencing statutes, 18 U.S.C. § 3553(e), and the sentencing guidelines.

18 U.S.C. § 3553(e) provides,

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

The amendments which added subsection (e) to § 3553 were adopted two months prior to the adoption of the amendments to Section 201 which resulted in the re-wording and recodification of the witness bribery prohibitions in 201(c)(2). *See,* Pub.L. 99–570, 1986 U.S.Code & Cong. Admin. News, 5393; Pub.L. 99–646, 1986 U.S.Code & Cong. Admin. News, 6139. 28 U.S.C. § 994(n) referenced in § 3553(e) directs the Sentencing Commission to ensure that the sentencing

---

4. It appears to this Court that the *Singleton* court strained to find that Section 201(c)(2) did not fit within the class of cases in which application of the statute would work an absurdity. Indeed, the *Singleton* court actually acknowledged the "absurdity" presented between the immunity statute and Section 201(c)(2) when the latter is construed to apply to federal prosecutors but simply it chose to overlook this manifest inconsistency: "[W]e leave for other courts 'the classic judicial task of reconciling [§§ 6001–6005 and § 201(c)(2)], and getting them to 'make sense' in combination.'" 144 F.3d at 1348 (citation omitted).

guidelines reflect "the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." Accordingly, the sentencing guidelines provide that the Government may move for a downward departure from the guidelines if it determines that the defendant has "provided substantial assistance in the investigation or prosecution of another person who has committed an offense...", U.S.S.G. § 5K1.1, and "[t]he appropriate reduction shall be determined by the court for reasons stated **that may include** the truthfulness, completeness, and reliability of any information or **testimony provided by the defendant.**" U.S.S.G. § 5K1.1 (a)(2) (emphasis added). *See also* Fed. R.Crim. Pro. 35(b) ("the court, on motion of the Government made within one year after the imposition of the sentence, may reduce the sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense....")

Clearly, Section 3553(e), Rule 35 and the sentencing Guidelines all anticipate that the Government may intercede on a defendant's behalf and request a reduced sentence in exchange for his agreement to testify on behalf of the Government in the prosecution of others. Given the fact that Section 3553 and Section 201 were amended within two months of each other, if Congress had intended Section 201(c)(2)'s prohibitions to apply to the Government in agreeing to move for reduced sentences in exchange for a cooperating defendant's testimony, it would have said so. By its silence and by its adoption of Section 3553(e), it has effectively said otherwise.

The *Singleton* court found no inconsistency between application of § 201(c)(2) and the above sentencing statutes, guidelines and rules simply because it noted that "each of these provisions of law authorizes only that substantial assistance can be rewarded *after* it is rendered; none authorizes the government to make a deal for testimony *before* it is given." *Id.* at 1354–55 (emphasis added). Yet, there is absolutely nothing in Section 201(c)(2) (or any other of the anti-bribery provisions of Section 201) to support this premise—i.e., there is nothing in the anti-bribery statute which distinguishes the criminality or non-criminality of "giving of [a] thing of value" in exchange for testimony based upon the timing of the giving.

The *Singleton* court then went on to attempt to harmonize section 201(c)(2) and the sentencing statutes and guidelines by concluding that "substantial assistance" as used in the sentencing statutes and guidelines must be read to not include testimony. *Id.* at 1354–55. Nothing in the Legislative History of Section 201(c)(2) or its predecessor, 18 U.S.C. § 201(h) supports this conclusion. Indeed, as indicated above, such a strained construction is belied by the expressly stated Sentencing Guidelines policy statement as to what constitutes "Substantial Assistance to Authorities" under U.S.S.G. 5K1.1 which explicitly includes within the meaning of the term "assistance" as used in the Guidelines, "any information or *testimony* provided by the defendant".

That Section 201(c)(2) should be construed not to cover federal prosecutors is further bolstered by the well-settled rule that criminal prohibitions do not generally apply to reasonable enforcement actions by officers of the law. *Brogan v. United States,* —— U.S. ——, 118 S.Ct. 805, 811, 139 L.Ed.2d 830 (1998). The *Singleton* court determined, however, that this general rule applies only in the criminal "investigatory" context, and because it found no cases in which the rule was applied to prosecutors representing the government after the initiation of criminal proceedings, it decided that this general rule was inapplicable after an defendant is indicted. Again, there is nothing in *Brogan* which supports drawing a line for application of the rule at the point in time when criminal charges are first initiated.[5]

---

5. Furthermore, Rule 11 plea bargaining can reasonably be viewed as part of the investigatory process in that the process is premised upon a

debriefing of the defendant which, as noted by the Advisory Committee in its Notes regarding the 1974 amendments to Rule 11, may "contrib-

## D. WERE THE PROMISES MADE BY THE GOVERNMENT "THINGS OF VALUE"?

In *Singleton*, the court determined that because the purpose of government's promised actions was to reduce co-defendant/witness Douglas's jail time, and because "it is difficult to imagine anything more valuable than personal freedom", the promises purportedly made by the Government were "things of value" under Section 201(c)(2). However, in making that determination, the Tenth Circuit panel glossed over what this Court believes is an important issue: who is doing the "giving, offering or promising" of the purported "things of value"?

## E. WHO IS DOING THE "GIVING, OFFERING, OR PROMISING" OF THE THING OF VALUE?

■ In deciding the *Singleton* Section 201(c)(2) question, the Tenth Circuit failed to recognize that in entering into Rule 11 agreements with promises *to advise the sentencing court* of the defendant's cooperation, *move* for downward departures or *recommend* dismissal of certain charges, federal prosecutors really are not the parties "giving, offering or promising" personal freedom. This is precisely what was promised to the Government witnesses in this case. In the Rule 11 plea agreements entered into with the Government witnesses whose testimony is at issue, the Government promised as follows:

Defendant has agreed to provide federal and local law enforcement authorities with assistance in the investigation and prosecution of others who are involved in criminal activities. In this regard, . . .

Defendant promises to provide truthful and complete information to the United States Attorney's office and to other law enforcement agencies. This includes and requires full debriefings and truthful testi-

mony at all proceedings, whether criminal, civil, or administrative.. This further includes grand jury proceedings, pretrial proceedings, trials and posttrial proceedings. . . .

\* \* \* \* \* \*

Upon the government's determination that Defendant's cooperation amounts to substantial assistance in the investigation of others involved in criminal activities, **the government will request the court** to depart downward from the applicable guideline range. . . .

If the government makes such a motion, based on Defendant's substantial assistance, the government will recommend a sentence of _____, rather than the term of imprisonment noted in section II(D) of this agreement. **However, the court's failure to follow such a recommendation is not a basis for Defendant to withdraw his guilty plea or to rescind the plea agreement.** . . .

The government [further] agrees that at the time of sentencing, **it will move to dismiss** counts _____ of the superseding indictment. . . .

[*See, e.g.,* Plea Agreements of Cespedes "Angel" Campo, Alberto "Mickey" Solis, Jose Balsce, Candalaria DeJesus and Roberto Perez Herrera.]

Thus, it is clear that all the prosecutors have done here is agree to recommend or request that the sentencing court reduce the co-defendant/witnesses' sentences and move for dismissal of some charges. The *Singleton* court superficially recognized this ("Although the information [and intervention] promised by the government certainly would not guarantee Mr. Douglas's release, it was an invaluable step toward that end,") but then glossed over it focusing only on the "great value" of the government's promised

---

ute to the successful prosecution of other more serious offenders." Typically, Rule 11 agreements, like the agreements with the co-defendant/witnesses in this case, provide for the defendant to provide testimony at trial, in pretrial proceedings, *and* before the grand jury. It is well-settled that grand jury proceedings are investigatory proceedings. *See United States v. Ca-*

*landra,* 414 U.S. 338, 343–44, 94 S.Ct. 613, 617–18, 38 L.Ed.2d 561 (1974) ("A grand jury proceeding is... an *ex parte* investigation...."). *See also, Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979 (1919).

information and intervention. To accept the *Singleton* court's premise and take it to its logical conclusion, **the sentencing court** which accepts a Rule 11 plea agreement and grants the Government's motion to dismiss certain charges or grants a motion for downward departure or for reduction of sentence **would, by the *Singleton* panel's definition, be criminally liable for violating Section 201(c)(2).** Of course, it would be absurd to conclude that Congress intended federal judges to be held criminally liable for taking such actions.

■ This Court's conclusion that the government cannot be deemed to violate Section 201(c)(2) when it enters into a Rule 11 agreement based upon the defendant's cooperation because it does nothing more than request or recommend that the court take a certain action is supported by the Sixth Circuit's decision in *United States v. Blanton*, 700 F.2d 298 (6th Cir.) *reheard in part*, 719 F.2d 815 (6th Cir.1983), *cert. denied*, 465 U.S. 1099, 104 S.Ct. 1592, 80 L.Ed.2d 125 (1984).

*Blanton* involved the conviction of the former governor of Tennessee and several of his political appointees on various charges of mail fraud, Hobbs Act violations, and conspiracy. The essence of the charges was that the defendants used their positions to see that friends of Blanton would receive retail liquor licenses from the Tennessee Alcoholic Beverage Commission ("ABC"). The most critical evidence against the defendants was the videotaped deposition of Jack Ham, an immunized witness who received a liquor license during Blanton's tenure and who allegedly agreed to give Blanton a cut of the profits in violation of state law. Ham had contributed $1,000 to Blanton's campaign.

After they were convicted, the defendants moved for a new trial on a number of grounds, including "prosecutorial misconduct", contending that the government violated 18 U.S.C. § 201(h) (the predecessor of section 201(c)(2)) by persuading ABC officials that the public interest would be served if Ham did not have to fear losing his liquor license because of his testimony. The district court rejected the defendants' argument and the Sixth Circuit affirmed:

We find no violation of § 201(h). The purported "thing of value"—a liquor license—was not offered by the government. The ABC director believed that the public interest would be served by exposure of possible corruption in the ABC during the Blanton administration. **Admittedly, the government encouraged the ABC to adopt this viewpoint. But there was no evidence that it had anything at its disposal *other than the power of persuasion;*** there is no evidence of any coercive power on the government's part. **Therefore, the offer cannot be said to have come from the government.**

This is precisely the situation presented in this case. The prosecutor has nothing more than the power of persuasion to encourage the Court to be lenient in sentencing the testifying co-defendants.

■ For all of the foregoing reasons, this Court disagrees with the *Singleton* decision and declines to follow it here. Furthermore, the Government pledges that it will adhere to its obligation to disclose to the jury evidence of its plea agreements with the testifying co-defendants and other witnesses. *See Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See also, United States v. Barrett*, 505 F.2d 1091 (7th Cir. 1974). As in this case, the defendant in *Barrett* moved to suppress a witness's testimony against him arguing that the government's plea bargain promises to a witness to drop charges against him and to recommend leniency to the sentencing court in exchange for his testimony violated 18 U.S.C. § 201(h) (the predecessor of Section 201(c)(2)). The Seventh Circuit affirmed the trial court's denial of the motion to suppress pointing out that the only remedy to which the defendant was entitled was to admit evidence of the plea agreement and to impeach witness with it when he testified. This is the remedy to which the Defendants in this case are entitled.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that Defendants' Motion to Suppress Testimony is DENIED.