The STATE of Ohio, Appellee,

v.

THOMAS, Appellant.

[Cite as *State v. Thomas* (1992), 80 Ohio App.3d 452.]

Court of Appeals of Ohio,
Logan County.

No. 8–91–18.

Decided June 2, 1992.

*Gerald L. Heaton,* Prosecuting Attorney, for appellee.

*Marc S. Triplett,* for appellant.

---

THOMAS F. BRYANT, Judge.

This cause of defendant-appellant, Douglas D. Thomas, is before us for the second time. On July 13, 1988, Thomas proffered guilty pleas to one count of aggravated robbery in violation of R.C. 2911.01(A)(1) with a firearm specification and two separate felony conviction specifications, and one count of involuntary manslaughter in violation of R.C. 2903.04(A) with a firearm specification. On July 18, 1988, the trial court accepted Thomas's guilty plea on all counts. Thereafter, on August 11, 1988, a second indictment issued by the grand jury surrounding the same circumstances was dismissed by the trial court.

On August 23, 1988, in open court, the trial judge announced Thomas's sentences as ten to twenty-five years for aggravated robbery, fifteen to twenty-five years for involuntary manslaughter and three years for the firearm specification, with each period of incarceration to be served consecutively. However, the journal entry filed on August 25, 1988, recited Thomas's sentence on aggravated robbery at fifteen to twenty-five years and ten to twenty-five years for involuntary manslaughter. Thomas appealed this judgment, and this court, on December 31, 1991, found error of the trial court in its sentencing proceedings and remanded the case for resentencing. See *State v. Thomas* (Dec. 31, 1990), Logan App. No. 8–88–20, unreported, 1990 WL 262265.

On January 23, 1991, Thomas moved to withdraw his guilty plea. On July 8, 1991, at hearing on his motion, Thomas moved to dismiss the original indictment upon which he entered his guilty plea. On this same day, the trial court denied both of Thomas's motions and resentenced him, by entry journalized on July 9, 1991, to fifteen to twenty-five years for aggravated robbery, ten to twenty-five years for involuntary manslaughter and three years for the firearm specification, with all sentences to be served consecutively.

Thomas now appeals this judgment and assigns three assignments of error.

Appellant's first assignment of error is:

"The trial court erred when it overruled Mr. Thomas's motion to dismiss the indictment because the grand jury foreman was a personal friend of the decedent. The overruling of the motion violated Mr. Thomas's rights as guaranteed by the fifth, sixth and fourteenth amendments to the United States Constitution and Article I, sections 10 and 16 of the Ohio Constitution."

▪ Thomas argues that the trial court erred in denying his motion to dismiss the original indictment since the grand jury foreman was acquainted with the deceased victim and this acquaintance deprived him of his rights pursuant to the United States and Ohio Constitutions. Specifically, Thomas complains that his rights to due process, equal protection and indictment by grand jury, as guaranteed by the Fifth and Fourteenth Amendments to United States Constitution and Sections 2 and 10, Article I of the Ohio Constitution, were contravened. We do not find merit to Thomas's claim for the reasons that follow.

Initially, we note the first assignment of error does not arise from allegations of error portrayed by the record of the proceeding here on appeal but from that previously before us on a prior appeal. It is clear that the time for appeal has long since passed on matters that might have been, but were not, assigned as error in that prior appeal. We address the issue only insofar as it may have bearing on the assignments of error properly presented here.

We first must point out that much of the authority Thomas relies on for support of this assigned error is misplaced and unpersuasive. Though Thomas correctly relies on R.C. 2313.42(J), pursuant to R.C. 2939.02 *et seq.,* in stating when a juror may be removed, his further reliance on *State v. Rogers* (1985), 17 Ohio St.3d 174, 17 OBR 414, 478 N.E.2d 984, and Crim.R. 24 for this proposition is misplaced. Crim.R. 24 and *Rogers* are only applicable to petit jurors, sitting as triers of fact, not grand jurors. Crim.R. 6 is the applicable rule concerning the appointment, functions and duties of a grand jury.

▪ Further, the United States Supreme Court case, *Vasquez v. Hillery* (1986), 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598, Thomas cites in support of his Fifth and Fourteenth Amendment claims is inapposite to the matter before us. In *Vasquez, supra,* the court held that the systematic exclusion of prospective grand jurors because of their race is reversible error. Here, the grand jury foreman's acquaintance with the deceased victim does not rise to the level of automatic reversible error that may be required in cases in which grand jurors are excluded solely because of their race. We also note that though Thomas's assigned error mentions that his Sixth Amendment rights were violated, he fails to argue or address this issue in his brief in *any* manner. Because of this failure, we do not address this peripheral issue. However, we do note that the Sixth Amendment guarantees rights to a defendant *at trial,* including the right to an impartial petit jury, and therefore is irrelevant to an inquiry concerning a grand jury proceeding.

Turning now to the merits, Thomas correctly cites R.C. 2313.42(J) to support his assigned error. The statute states as follows:

"The following are good causes for challenge to any person called as a juror:

"* * *

"(J) That he discloses by his answers that he cannot be a fair and impartial juror or will not follow the law as given to him by the court."

■ Here, the record does not demonstrate that the grand jury foreman's acquaintance with the victimized decedent prevented Thomas's indictment being rendered by a fair and impartial grand jury.

We first note, and Thomas freely admits, that the trial court properly charged the grand jury concerning its duties, including its duty to be fair and impartial, pursuant to Ohio Jury Instructions ("O.J.I."), Criminal, Section 401.15.

Also, pursuant to Crim.R. 6(A), a grand jury consists of "nine members, including the foreman, plus not more than five alternates." Crim.R. 6(F) states that "[a]n indictment may be found only upon the concurrence of seven or more jurors." Thus, the foreman is one vote among nine grand jurors in which seven must concur for an indictment to be issued.

■ Thomas's general assertion that the grand jury foreman's investigation is indicative of unfairness and partiality is not shown by the record and is unpersuasive. The foreman conducted his investigation *after* the first indictment was issued, to which indictment Thomas pled guilty, and, further, the trial court dismissed the second indictment in which the foreman's investigation developed the facts allegedly used to issue the second indictment. However, the very nature of an American grand jury is that of an accusatory body investigating whether an indictment should be issued based on probable cause, not a body sitting as trier of fact of an accused. O.J.I., Criminal, Section 401.15 clearly states the following:

"Although you have power to investigate any crime committed in this county under the laws of Ohio, you are not a general inquiring body. You have neither the duty nor the privilege of inquiring into subjects which the desire of one of your members or current public feeling of the moment may dictate, *unless it is related to crime. In the field of crime your authority for investigation is almost unlimited.*" (Emphasis added.)

■ The grand jury's very function is to hear evidence, investigate if warranted, and decide if there is sufficient evidence to find probable cause and require the accused to stand trial. As stated in the recently decided United States Supreme Court case, *United States v. Williams* (1992), 504 U.S. ——, 112 S.Ct. 1735, 118 L.Ed.2d 352:

"The grand jury's functional independence from the judicial branch is evident both in the scope of its power to investigate criminal wrongdoing, and in the manner in which that power is exercised. 'Unlike [a] [c]ourt, whose jurisdiction is predicated upon a specific case or controversy, the grand jury "can investigate merely on suspicion that the law is being violated, or even because it wants assurance that it is not." ' *United States v. R. Enterprises,* 498 U.S. 292, 297, 111 S.Ct. 722, 726, 112 L.Ed.2d 795 (1991) (quoting *United States v. Morton Salt Co.,* 338 U.S. 632, 642–643, 70 S.Ct. 357, 364, 94 L.Ed. 401 (1950)). It need not identify the offender it suspects, or even 'the precise nature of the offense' it is investigating. *Blair v. United States,* 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979 (1919). The grand jury requires no authorization from its constituting court to initiate an investigation, see *Hale* [*v. Henkel*], *supra,* 201 U.S. [43], at 59–60, 65, 26 S.Ct. [370], at 373, 375 [50 L.Ed. 652, at 659–660 (1906) ], nor does the prosecutor require leave of court to seek a grand jury indictment.

"[W]e have insisted that the grand jury remain 'free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it.' *United States v. Dionisio,* 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973). Recognizing this tradition of independence, we have said that the Fifth Amendment's 'constitutional guarantee *presupposes* an investigative body "acting independently of either prosecuting attorney *or judge*" . . . .' *Id.,* at 16, 93 S.Ct., at 773 (emphasis added) (quoting *Stirone* [*v. United States* ], *supra,* 361 U.S. [212], at 218, 80 S.Ct. [270], at 273 [4 L.Ed.2d 252 (1960) ] )."

 Therefore, even assuming *arguendo* that the second indictment had not been dismissed, the foreman was within his authority to investigate Thomas's possible criminal activity that was then before the grand jury. Further, the record does not substantiate in any manner Thomas's bare allegation that he was deprived of his rights because the foreman was acquainted with the victim/decedent. An otherwise lawful indictment can not be assumed to be defective based on the partially and unfairness of one grand juror solely because this grand juror had a casual acquaintance with the decedent-victim.

Based on the record, and the function of a grand jury, we believe that Thomas's original indictment was rendered by a fair and impartial grand jury in accordance with the rights afforded an accused by the United States and Ohio Constitutions. Because Thomas was not deprived of his constitutional rights, the trial court properly denied Thomas's motion to dismiss the indictment.

Accordingly, appellant's first assignment of error is not well taken.

Appellant's second assignment of error is:

"The trial court erred when it increased the sentence of Mr. Thomas as to the first count of the indictment from a minimum sentence of ten (10) years to a minimum sentence of fifteen (15) years. This increased sentence violated Mr. Thomas's rights as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."

■ Thomas contends that his rights, pursuant to the United States and Ohio Constitutions, were violated when the trial court resentenced him upon this court's remanding the cause for such resentencing because the trial court increased his sentence from ten to fifteen years for his conviction on aggravated robbery. Apparently Thomas argues that the trial court erred in increasing this sentence because he did not appeal his sentence on the aggravated robbery conviction.

As stated earlier, this court found the trial court erred in its sentencing procedures after accepting Thomas's guilty plea. See *State v. Thomas, supra.* Because of this error, we remanded the cause and stated: "[w]e vacate the judgment of the trial court sentencing appellant and remand the cause for resentencing consistent herewith." *Id.* Upon remand, the trial court resentenced Thomas and increased his sentence for aggravated robbery from ten years minimum to fifteen years minimum. However, we find no error in the trial court's judgment in resentencing Thomas to a greater term of incarceration than previously sentenced, on August 23, 1988, in open court, but still within the applicable statute. In the interests of justice, this court vacated Thomas's original sentence with instructions to the trial court to resentence Thomas. By vacating Thomas's original sentence and remanding the cause for resentencing, we, in no manner whatsoever, limited the trial court's authority to resentence Thomas correctly within the law on the counts to which he pled guilty.

■ Finally, we note that a judgment imposing a sentence violative of statute is void and a nullity, thus permitting resentencing as if no prior attempt to sentence had been made. See *State v. McColloch* (1991), 78 Ohio App.3d 42, 603 N.E.2d 1106. Because of our judgment, and Thomas's guilty plea to aggravated robbery, the trial court properly resentenced Thomas in accordance with the mandate of our prior judgment and written opinion.

Accordingly, appellant's second assignment of error is not well taken.

Appellant's third assignment of error is:

"The trial court erred when it refused to permit Mr. Thomas to withdraw his guilty pleas pursuant to Crim.R. 32.1. Mr. Thomas's pleas were neither

knowingly, intelligently nor voluntarily entered as required by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution."

Thomas contends that the trial court erred in not allowing him to withdraw his guilty pleas to involuntary manslaughter and aggravated robbery prior to his resentencing because his pleas were not knowingly, intelligently or voluntarily entered. Thomas bases this contention on the assertions that (1) he originally, prior to his guilty pleas, directed his trial counsel not to plea bargain with the state, and (2) his guilty pleas were entered upon his trial counsel's alleged coercion concerning the possibility of a death penalty sentence.

This court in *State v. Felver* (Oct. 23, 1989), Auglaize App. No. 2–88–3, unreported, 1989 WL 125044, stated the following:

"The only issue in reviewing the viability of a guilty plea, negotiated or otherwise, should be whether the totality of the circumstances demonstrate[s] that it was knowingly and voluntarily entered in substantial compliance with Crim.R. 11. See *State v. Stewart* (1979), 51 Ohio St.2d 86 [5 O.O.3d 52, 364 N.E.2d 1163], *State v. Billups* (1979), 57 Ohio St.2d 31 [11 O.O.3d 150, 385 N.E.2d 1308], and *State v. Rainey* (1982), 3 Ohio App.3d 441 [3 OBR 519, 446 N.E.2d 188]." See, also, *State v. Wright* (May 1, 1992), Seneca App. No. 13–91–32, unreported, 1992 WL 93000.

In *State v. Lambros* (1988), 44 Ohio App.3d 102, 103, 541 N.E.2d 632, 634, the court stated:

"When the court denies a presentence motion to withdraw a guilty plea, appellate review is limited to a determination of whether the trial court abused its discretion. [Citations omitted.] Abuse of discretion is 'more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " See, also, *State v. Perterseim* (1980), 68 Ohio App.2d 211, 22 O.O.3d 341, 428 N.E.2d 863.

Clearly, our inquiry in the case *sub judice* is limited to whether the trial court abused its discretion in denying Thomas's motion to withdraw his guilty pleas.

On July 18, 1988, the trial court held a hearing, pursuant to Crim.R. 11, on Thomas's proffered guilty pleas. At this hearing, the trial judge extensively questioned and informed Thomas of his rights and the consequences in entering guilty pleas. Thomas repeatedly assured the trial court that he understood all his rights, the waiver of such if his pleas were accepted, and the possible sentencing consequences. Thereafter, the trial court accepted Thomas's guilty pleas and, after a short continuance, sentenced him.

Upon this court vacating the original sentence and remanding the cause for resentencing, Thomas moved the trial court to withdraw his guilty pleas pursuant to Crim.R. 32.1. On July 8, 1991, the trial court held a hearing on this motion. After receiving evidence, including Thomas's statements concerning his assertions presently argued here, the trial court denied Thomas's motion to withdraw his guilty pleas.

We are unable to speculate on any possible agreements or the substance of the attorney-client relationship Thomas may have had with his trial counsel, including an agreement and/or strategy concerning Thomas's proffering of his guilty pleas. Such relationship is privileged and personal to the attorney and client and is beyond our scope of inquiry. (In passing, we further note that Thomas does not assert he was denied effective assistance of counsel.) However, the record is unequivocally clear that the trial court instructed Thomas of his rights, elicited Thomas's response that he understood his rights and his effective waiver of such upon the acceptance of his guilty plea, and Thomas still maintained his willingness to enter his pleas of guilty. The record is completely devoid of any circumstances that would allow one to conclude that Thomas entered his guilty pleas in an unknowing, unintelligent and involuntary manner.

Because the record shows that Thomas knowingly, intelligently and voluntarily entered his guilty pleas to involuntary manslaughter and aggravated robbery, the trial court, at hearing, did not abuse its discretion in denying Thomas's motion to withdraw his pleas.

Accordingly, appellant's third and final assignment of error is not well taken.

Having found no error, we affirm the judgment of the Court of Common Pleas of Logan County.

*Judgment affirmed.*

EVANS and SHAW, JJ., concur.