The STATE of Ohio, Appellee,

v.

HUNSAKER, Appellant.

[Cite as *State v. Hunsaker* (1992), 78 Ohio App.3d 251.]

Court of Appeals of Ohio,
Auglaize County.

No. 2-90-21.

Decided June 30, 1992.

*Mark Spees*, Prosecuting Attorney, and *Edwin Pierce*, Assistant Prosecuting Attorney, for appellee.

*William E. Huber*, for appellant.

HADLEY, Presiding Judge.

Defendant-appellant, Greg Hunsaker ("appellant"), appeals from a judgment and sentence of the Auglaize County Court of Common Pleas. On April 18, 1990, the trial court found appellant guilty on one count of rape and one count of sexual battery; and, on July 17, 1990, the court sentenced him to an indefinite term of five to twenty-five years and a definite term of one and one-half years, to be served concurrently.

Appellant was initially questioned by Deputy Jerry Sawmiller and Patricia Knippen, an Auglaize County Children Services Supervisor, after appellant's two minor daughters, Tracy and Cari Hunsaker, alleged that appellant had sexually molested them over a period of years.

Thereafter, upon hearing the testimony of Tracy, Cari and Deputy Sawmiller, the Auglaize County Grand Jury indicted appellant on the following counts: Count I, rape by force, R.C. 2907.02(A)(2); Counts II and III, rape of one under the age of thirteen, R.C. 2907.02(A)(1)(b); Counts IV and V, sexual battery, R.C. 2907.03(A)(5); Counts VI and VII, gross sexual imposition, R.C. 2907.05(A)(3). Appellant entered a plea of not guilty to each of these counts.

The state's response to appellant's request for a bill of particulars provides the best summary of the pertinent conduct, taking place at the family residence in St. Marys, Ohio, alleged to have constituted the offenses charged:

"Count I—Rape: At or between the 29th day of July, 1988, and the 30th day of September, 1989, Appellant did engage in sexual conduct with another when Appellant purposely compelled said other person to submit by force or threat of force, by forcing Tracy Hunsaker to engage in cunnilingus with Appellant.

"Count II—Rape: At or between the 1st day of January, 1987, and the 28th day of July, 1988, Appellant did engage in sexual conduct with another who was not his spouse when the other person was less than thirteen years of age, to wit: Appellant did engage in fellatio with Tracy Hunsaker whose date of birth is July 29, 1975.

"Count III—Rape: At or between the 1st day of January, 1986, and the 30th day of September, 1989, Appellant did engage in sexual conduct with another who was not his spouse when the other person was less than thirteen years of age, to wit: Appellant engaged in sexual intercourse with Cari Hunsaker whose date of birth is July 8, 1977.

"Count IV—Sexual Battery: At or between the 1st day of January, 1986 and the 30th day day of September, 1989, Appellant did engage in sexual conduct with another not his spouse when Appellant was said other person's natural or adoptive parent, guardian, custodian or person in loco parentis, to wit: Appellant did engage in fellatio and cunnilingus with his daughter Tracy Hunsaker.

"Count V—Sexual Battery: At or between the 1st day of January, 1986 and the 30th day of September, 1989, Appellant did engage in sexual conduct with another not his spouse when Appellant was said other person's natural or adoptive parent, guardian, custodian or person in loco parentis, to wit: Appellant did engage in sexual intercourse with Cari Hunsaker.

"Count VI—Gross Sexual Imposition: At or between the 1st day of January, 1986 and the 30th day of September, 1989, Appellant did have sexual contact with another not his spouse when the other person was less than thirteen years of age, to wit: by Appellant touching and rubbing the breasts and vaginal area of his daughter Cari Hunsaker whose date of birth is July 8, 1977.

"Count VII—Gross Sexual Imposition: At or between the 1st day of January, 1986, and the 28th day of July, 1988, Appellant did have sexual contact with another not his spouse when the other person was less than thirteen years of age, to wit: by Appellant touching and rubbing the vaginal area and the breasts of his daughter Tracy Hunsaker whose date of birth is July 29, 1975."

Appellant filed a motion to dismiss the indictment and the trial court overruled the same. A trial to the court commenced and, at the close of the state's evidence, the court dismissed Count I of the indictment pursuant to Crim.R. 29. At the close of all the evidence, the court returned verdicts of guilty to Counts II and IV of the indictment and not guilty verdicts to Counts III, V, VI and VII. Appellant was subsequently sentenced as set forth above.

Appellant now appeals from the foregoing judgment posing the following four assignments of error:

### Assignment of Error No. 1

"The court erred in failing to grant Defendant Appellant's motion to dismiss the indictment."

Appellant's motion to dismiss the indictment was primarily based on his allegations of excessive use of hearsay, use of perjured testimony and the prosecutor's interjection of his own theories on sexual abuse at the grand jury proceedings.

Specifically, appellant refers to statements in Deputy Sawmiller's Grand Jury testimony where Deputy Sawmiller relates what appellant told him during the interview that he and Patricia Knippen conducted. Whereas the deputy's reiteration of what appellant told him was admissive in nature, appellant alleges that the testimony was inconsistent with his actual statements of denial.

With a litany of supporting federal court cases, appellant contends that we should apply the allegedly stricter federal view regarding the use of hearsay testimony at a grand jury proceeding. We disagree. The Ohio Rules of Evidence are not applicable to proceedings before grand juries, see Evid.R. 101(C)(2), and finding it a task better left to others, we decline the offer to create exceptions.

Regarding appellant's assertion that the indictment was obtained by the use of perjured testimony, the primary points of controversy are as follows:

Transcribed from the interview with appellant:

"(Deputy). We want you to tell us what happened. I think there is more to it just the way you're acting, there's more to it, more details I think you're leaving out.

"(Appellant). I told you I told Tracy I liked her and she's pretty and I wouldn't mind having sex with her if I was her age, but I said I'm her father. She has a complex sometimes and I told her she's pretty and I wouldn't have no trouble being her boyfriend or nothing. What do you guys want?

" * * *

"(Deputy) I'm sure it's not a situation where you tried to harm your daughters here because you love your daughters. You are a parent, there are certain things parents do, by the same token * * *.

"(Appellant) I've played with them, I've tickled them, I've touched their breasts and I've pinched them between the legs, I've done things, yea.

" * * *

"(Appellant) I also kissed them and I've embraced them in a kissing way, just teasing with them, but I never did it to hurt anybody and I'm not going to hurt anybody because I'm not that kind."

Deputy Sawmiller's grand jury testimony:

"Q. And what did he tell you about that?

"A. He would admit to touching the girls in a sexual manner. He did admit to touching them several times on their breasts and their vaginal areas but he said that he did it in a playful manner as they were wrestling around on the floor and wrestling in his bed.

"Q. Okay. Did he make any statement about having indicated that he wanted to have sex with one (1) of his daughters?

"A. Yes, he did. He rationalized it by saying that he meant the statement to compliment his daughter's good looks and it wasn't meant in a sexual manner.

"Q. Has he ever admitted to kissing the girls in an intimate or sexual manner?

"A. Yes, he did.

"Q. What did he say about that?

"A. That, I don't recall offhand."

■

■ In that the purpose of the grand jury is to determine if probable cause exists to believe that the crime alleged has been committed and that the defendant committed it, we find that the inconsistencies between Deputy Sawmiller's version of what appellant stated and the transcript of the interview are slight and certainly not materially sufficient to necessitate the extraordinary remedy of dismissing the entire indictment.

■ Appellant has also asserted that the indictment should be dismissed because the prosecutor made improper personal remarks during the grand jury proceeding. We disagree. The prosecutor's stated, in part: "Just to interject the way I feel about it," "she wants to stay with her dad anda [sic] it's hard for me to believe" and "it's also typical to get that kind of response from the offender of 'I didn't do anything but if I did it wasn't sexual in nature, it was only playful in nature,' or 'I did it.'"

Though ill-advised, we can not say that these statements were prejudicial to appellant's cause. The grand jury was there to determine the issue of probable cause and Tracy and Cari Hunsaker had just testified in detail regarding their allegations of sexual abuse by their father. In addition, when the grand jury was sworn in, they were specifically instructed and cautioned that rumors were unreliable and should be disregarded, that hearsay testimony was admissible and could be considered as long as the source and nature of it was understood and that neither the prosecuting attorney nor any of his assistants were to influence them in their decision as to whether an indictment should be approved. As it is presumed that a trial court's instructions will be obeyed (see *State v. Dunkins* [1983], 10 Ohio App.3d 72, 10 OBR 82, 460 N.E.2d 688) and appellant offers nothing to show that they were not followed, we find no prejudicial error.

Therefore, appellant's first assignment of error is overruled.

### Assignment of Error No. 2

"The verdict of the trial court as to counts two and count four should be reversed as they are against the manifest weight of the evidence and the evidence introduced by the State to support count two and count four are insufficient as a matter of law to sustain the verdict with proof beyond a reasonable doubt."

In *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, the Ohio Supreme Court declared:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The

relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Citation omitted.)

■ After reviewing the evidence presented in a light most favorable to the prosecution, we find it clear that any rational trier of fact could have found the essential elements of both rape and sexual battery proven beyond a reasonable doubt.

Tracy's trial testimony is, in part, as follows:

"Q. Alright. When you say that your dad would suck on your twinkie [vaginal area], what do,—what,—what do you mean by that? What part of his body would he use?

"A. His mouth.

" * * *

"Q. Okay when would have the last time this happened been?

"A. Before my mom or,—month or two before Pat came and talked to me.

" * * *

"Q. How many times would your father have done this,—to suck on your twinkie?

"A. About five or six times.

" * * *

"Q. Did your dad ever suck on your twinkie when you were still going to school at West?

"A. Yeah.

"Q. Okay. Do you remember what grade you would have been in?

"A. Probably from third on up.

" * * *

"Q. How often would that happen, Tracey [sic], that your dad would ask you to suck on his dick?

"A. Four of five times.

" * * *

"Q. Okay, so how many times do you think that you did suck on his dick?

"A. About four or five times. He asked me more than that though.

" * * *

"Q. Let me ask you this, Tracey [*sic*]. Did you,—If you remember, did you ever suck on your father's dick when you were twelve years old or younger?

"A. Yes.

"Q. Okay. How do you remember that?

"A. I don't know.

"Q. Okay. You just remember that?

"A. I know I done it when I was younger. I just don't remember.
" * * *

"Q. When you were first asked about all of this happening by Pat Knippen, what did you tell her?

"A. That he didn't do it to us.
" * * *

"Q. Can you tell the Court why is it that you didn't want to tell Pat that?

"A. 'Cause I didn't want my dad to get in trouble."

The inconsistencies in the answers to the social worker's questions and the testimony to the court are obviously not unusual in a case of sexual child abuse and they were continually an issue brought up, as it properly should have been, on cross-examination. However, as the trier of fact, it was the trial court's prerogative to judge the credibility of the witnesses. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212. Accordingly, if the trial court believed Tracy's testimony, we find that more than sufficient evidence existed to convince the average mind of appellant's guilt beyond a reasonable doubt.

Therefore, appellant's second assignment of error is overruled.

### Assignment of Error No. 3

"The lower court errored [*sic*] in denying the Defendant's motion to merge the conviction of Ohio Revised Code § 2907.02 (rape) and the conviction of Ohio Revised Code § 2907.05 (sexual battery) in accordance with Ohio Revised Code § 2941.25."

By this assignment, appellant asserts that the convictions should have been merged pursuant to R.C. 2941.25 because the state failed to establish a separate animus for each conviction.

R.C. 2941.25 provides:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information

may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

 The purpose of this statute is to prohibit duplication of punishment where both crimes are motivated by the same purpose and where conviction of both would be dependent upon identical conduct and the same evidence. *State v. Brown* (1982), 7 Ohio App.3d 113, 116, 7 OBR 145, 149, 454 N.E.2d 596, 600. In *Newark v. Vazirani* (1990), 48 Ohio St.3d 81, 549 N.E.2d 520, syllabus, the Ohio Supreme Court declared:

"Under R.C. 2941.25, a two-tiered test must be undertaken to determine whether two or more crimes are allied offenses of similar import. In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses. (*State v. Blankenship* [1988], 38 Ohio St.3d 116, 117, 526 N.E.2d 816, 817, approved and followed.)" (Emphasis *sic*.)

The offenses of which appellant was found guilty of provide, in pertinent part, as follows:

R.C. 2907.02 Rape.

"(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * *:

"* * * *

"(b) The other person is less than thirteen years of age * * *."

R.C. 2907.03 Sexual Battery.

"(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when * * *:

"* * * *

"(5) The offender is the other person's natural or adoptive parent * * *."

In reviewing the elements of the aforementioned offenses, it is not true that "commission of one crime will result in the commission of the other." Obviously, an offender can engage in sexual conduct with one who is less than thirteen years of age and still not be that person's parent or guardian.

Moreover, though the range of dates in which the crimes occurred do overlap, the victim testified to numerous incidents of varying sexual acts over a long period of time, including some that occurred after her thirteenth birthday. As such, we find that the offenses herein were not crimes of similar import and that the trial court was correct in sentencing appellant on each separate count.[1]

Therefore, appellant's third assignment of error is overruled.

### Assignment of Error No. 4

"The verdict of the trial court is inconsistent to the point of logical impossibility and Defendant/Appellant should either be acquitted on the reamining [sic] charges or the cause should be reversed and remanded for a new trial."

■ Appellant contends that the verdicts were "inconsistent to the point of logical impossibility" because the trial court found him guilty on Counts II and IV, rape and sexual battery, i.e., engaging in acts of fellatio and cunnilingus with Tracy, yet still found him not guilty on Count VII, gross sexual imposition, i.e., touching and rubbing Tracy's breasts and vagina, when she testified with equal vigor that all of these acts occurred.

In State v. Adams (1978), 53 Ohio St.2d 223, 7 O.O.3d 393, 374 N.E.2d 137, paragraph two of the syllabus, the Ohio Supreme court pronounced:

"The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count. (Browning v. State [1929], 120 Ohio St. 62 [165 N.E. 566], approved and followed.)" See, also, State v. Woodson (1985), 24 Ohio App.3d 143, 24 OBR 231, 493 N.E.2d 1018; and United States v. Powell (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461.

To reach the result appellant desires, he asks us to substitute the decisions of a handful of other states for those of the Ohio Supreme Court and the

---

1. We also note that the stated purpose of R.C. 2941.25 is to "prohibit duplication of punishment" and, due to the nature of the rape charge and that appellant's two sentences are to run concurrently with no fines imposed, appellant did not receive any longer term of incarceration or additional sentence by his conviction for sexual battery.

United States Supreme Court. We refuse and find that, on the authority of *Adams, supra,* this assignment of error is without merit.

Accordingly, for the foregoing reasons, appellant's four assignments of error are overruled and the judgment of the Auglaize County Court of Common Pleas is affirmed.

*Judgment affirmed.*

EVANS and THOMAS F. BRYANT, JJ., concur.