## In re AUGUST 28, 2002 GRAND JURY SUBPOENA.

[Cite as *In re August 28, 2002 Grand Jury Subpoena*,
151 Ohio App.3d 825, 2003-Ohio-1184.]

Court of Appeals of Ohio,
Third District, Marion County.

No. 9–02–46.

Decided March 14, 2003.

Jim Slagle, Marion County Prosecuting Attorney, and Sara Babich, Assistant Prosecuting Attorney, for appellant.

John W. Zeiger and Marion H. Little Jr., for appellees.

SHAW, Judge.

{¶ 1} The appellant, the state of Ohio, appeals from the August 29, 2002 order to quash a subpoena duces tecum of the Court of Common Pleas of Marion County, Ohio.

{¶ 2} The limited record before this court reveals that Diana Farst, a resident of Marion County, Ohio, was under investigation by the appellant, the state of

Ohio, when she was interviewed by the appellee, James Donovan, a reporter for WBNS–10 TV in Columbus, Ohio, regarding the subject matter of the state's investigation. A small segment of this videotaped interview with Farst appeared on the 11:00 p.m. edition of WBNS's Eyewitness News program. Based upon the airing of this interview, the state of Ohio issued a subpoena duces tecum on August 9, 2002, commanding Donovan to appear and give testimony before a grand jury on August 28, 2002, as well as deliver all unedited and/or unaired portions of the taped interviews with Farst. The subpoena also contained a provision that excused Donovan from testifying if he produced the videotape by that date.

{¶ 3} Donovan and WBNS (collectively referred to as "WBNS") filed a motion to quash the subpoena, asserting that such information was subject to protection pursuant to the First Amendment to the United States Constitution. The state was afforded the opportunity to respond, which it did by way of a written memorandum. Finding that the state failed to provide anything of evidentiary value in its response, the trial court quashed the subpoena. This appeal followed, and the state now asserts three assignments of error. As each assignment of error relates to whether the trial court erred in quashing the subpoena duces tecum, they will be addressed together.

{¶ 4} "The trial court erred in granting a television news reporter's motion to quash a subpoena on the basis of a constitutional and/or common-law privilege."

{¶ 5} "The trial court erred in ruling that statements made by a suspect may not be presented to the grand jury as party opponent admissions."

{¶ 6} "The trial court erred in ruling that in response to a motion to quash, the prosecutor is required to provide a trial court with evidentiary materials to justify the issuance of a grand jury subpoena."

■ {¶ 7} The Rules of Criminal Procedure provide that "[a] subpoena may also command the person to whom it is directed to produce the books, papers, documents or other objects designated therein; but the court, upon motion made promptly and in any event made at or before the time specified in the subpoena for compliance therewith, may quash or modify the subpoena if compliance would be unreasonable or oppressive." Crim. R. 17(C). Once a trial court grants a party's motion to quash a subpoena, a reviewing court will not reverse that decision absent an abuse of discretion, unless the decision involves a specific construction of law. *Petro v. N. Coast Villas Ltd.* (2000), 136 Ohio App.3d 93, 735 N.E.2d 985. An abuse of discretion implies that the attitude of the court is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140.

■ {¶ 8} WBNS maintains that when a party seeks unpublished information gathered by the press, it must establish (1) the relevance of the information, (2) a compelling need for the information, and (3) a lack of alternate means to obtain the information. In support of this contention, WBNS provides citations to several federal circuit courts. Notably, the Sixth Circuit, in which this court sits, is not included among these citations. In fact, the Sixth Circuit expressly declined to adopt such a test. *In re Grand Jury Proceedings* (C.A.6, 1987), 810 F.2d 580. Likewise, neither the United States Supreme Court nor the Supreme Court of Ohio appears to have adopted any such test in the circumstances before us. See *Branzburg v. Hayes* (1972), 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626; *State ex rel. NBC, Inc. v. Court of Common Pleas of Lake Cty.* (1990), 52 Ohio St.3d 104, 556 N.E.2d 1120.

■ {¶ 9} In the case sub judice, the subpoena duces tecum was issued as part of a grand jury investigation. The function of the grand jury in our society is critical to protecting the citizens of our country, both from crime and from unwarranted criminal prosecution. "Because its task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad." *Branzburg v. Hayes* (1972), 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626. In addition, "[i]t is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair v. United States* (1919), 250 U.S. 273, 282, 39 S.Ct. 468, 63 L.Ed. 979. Thus, the United States Supreme Court has noted that the grand jury's "authority to subpoena witnesses is not only historic, but essential to its task." (Internal citations omitted.) *Branzburg*, supra.

{¶ 10} In accordance with constitutional dictates, this court has recognized the insistence of the United States Supreme Court that "the grand jury remain 'free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the *legitimate* rights of any witness called before it.'" (Emphasis added.) *State v. Thomas* (1992), 80 Ohio App.3d 452, 457, 609 N.E.2d 601, quoting *United States v. Dionisio* (1973), 410 U.S. 1, 17–18, 93 S.Ct. 764, 35 L.Ed.2d 67. Furthermore, the United States Supreme Court has held that "[f]air and effective law enforcement aimed at providing security for the person and property of the individual is a fundamental function of government, and the grand jury plays an important, constitutionally mandated role in this process." *Branzburg*, 408 U.S. at 690, 92 S.Ct. 2646, 33 L.Ed.2d 626.

{¶ 11} Although recognizing the importance of the grand jury, WBNS nevertheless maintains that its legitimate right to determine the editorial content of its

broadcast is being trenched upon by the state's issuance of the subpoena. The United States Supreme Court has held that requiring newsmen to appear and testify before state or federal grand juries does not abridge the freedom of speech and press guaranteed by the First Amendment. *Branzburg,* 408 U.S. at 667, 92 S.Ct. 2646, 33 L.Ed.2d 626. Rather, the court found that "reporters, like other citizens, [must] respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial." Id. at 690–691, 92 S.Ct. 2646, 33 L.Ed.2d 626. In addition, the court in *Branzburg* found that the possible "chilling effect" of requiring newsreporters to respond to subpoenas was "speculative" to a great extent. Id. at 694, 92 S.Ct. 2646, 33 L.Ed.2d 626. Moreover, the court held that "the press has the right to abide by its agreement not to publish all the information it has, but the right to withhold news is not equivalent to a First Amendment exemption from the ordinary duty of all other citizens to furnish relevant information to a grand jury performing an important public function." Id. at 697, 92 S.Ct. 2646, 33 L.Ed.2d 626. The court further held that "the characteristic secrecy of grand jury proceedings is a further protection against the undue invasion of [the press's] rights[,]" and that "[t]he investigative power of the grand jury is necessarily broad if its public responsibility is to be adequately discharged." Id. at 700, 92 S.Ct. 2646, 33 L.Ed.2d 626.

{¶ 12} In *Branzburg,* the court specifically refused to require lower courts to ascertain whether a similar three-part test propounded now by WBNS was satisfied before obligating a reporter to respond to a grand jury subpoena. Id. at 705, 92 S.Ct. 2646, 33 L.Ed.2d 626. However, the court noted that both Congress and the state legislatures had the power to "fashion standards and rules as narrow or broad as deemed necessary to deal with the evil discerned[.]" Id. at 706, 92 S.Ct. 2646, 33 L.Ed.2d 626. In addition, the court held that "news gathering is not without its First Amendment protections, and grand jury investigations if instituted or conducted other than in good faith, would pose wholly different issues for resolution. * * * Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification." Id. at 707–708, 92 S.Ct. 2646, 33 L.Ed.2d 626.

{¶ 13} The Ohio Supreme Court specifically noted the rejection of the three-part test urged in *Branzburg,* see *State ex rel. NBC, Inc. v. Court of Common Pleas of Lake Cty.* (1990), 52 Ohio St.3d 104, 110, 556 N.E.2d 1120, which WBNS now urges here. In *NBC,* the Ohio Supreme Court discussed the majority's opinion in *Branzburg,* as well as the concurring opinion of Justice Powell, who provided the fifth vote for the majority opinion. The Ohio Supreme Court recognized that other jurisdictions interpreted Justice Powell's concurrence to require a balancing of a reporter's interest with those of the litigants. *NBC,* 52

Ohio St.3d at 110, 556 N.E.2d 1120. However, the court, relying upon the interpretation of *Branzburg* by the Sixth Circuit Court of Appeals, found that Justice Powell was not advocating the adoption of the three-part test but was "concerned with the possibility that law enforcement authorities might demand information only remotely related to a particular investigation, solely 'in order to disrupt * * * [a reporter's] relationship with confidential news sources * * *.'" Id. at 110–111, 556 N.E.2d 1120, quoting *In re Grand Jury Proceedings* (C.A.6, 1987), 810 F.2d 580, 586. Thus, based upon *Branzburg* and *In re Grand Jury Proceedings,* the Ohio Supreme Court likewise refused to adopt the three-part test adopted by other jurisdictions, which it found to be an erroneous interpretation of Justice Powell's concurrence in *Branzburg. NBC,* supra.

{¶ 14} Despite these holdings, WBNS and apparently the trial court, which granted WBNS's motion to quash without a full explanation, seem to place an evidentiary burden on the state to demonstrate the necessity of the subpoena and to satisfy the three-part test adopted by other jurisdictions before requiring WBNS to respond to the subpoena. We disagree. WBNS did not assert, and the trial court did not find, that the grand jury investigation of Farst was not instituted in good faith or that the subpoena was issued not for purposes of law enforcement but to disrupt WBNS's relationship with its news sources. In addition, although R.C. 2739.04 and 2739.12 prohibit a reporter from being required to reveal the source of his or her information, the confidentiality of WBNS's source was not an issue, as Farst's identity was known. Rather, the only "right" that WBNS sought to protect was its decision on what to broadcast. However, neither *Branzburg, In re Grand Jury Proceedings,* nor *NBC* provides protection for this type of editorial decision-making.

{¶ 15} Furthermore, WBNS does not contend that the subpoena was otherwise unreasonable or oppressive, nor could it be given the fact that only one videotaped interview was requested. Thus, as the court in *Branzburg* held, on the record now before us, we perceive no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to override the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial. See *Branzburg,* 408 U.S. at 690–691, 92 S.Ct. 2646, 33 L.Ed.2d 626. Therefore, the trial court had no basis in law for quashing this subpoena and, in so doing, abused its discretion. Accordingly, the first and third assignments of error are sustained.

■ {¶ 16} As previously discussed, the grand jury is given wide latitude in investigating whether a crime has occurred. Thus, a grand jury is within its province to consider statements from anyone, including hearsay, as "[t]he Ohio

Rules of Evidence are not applicable to proceedings before grand juries[.]" *State v. Hunsaker* (1992), 78 Ohio App.3d 251, 254, 604 N.E.2d 247, citing Evid.R. 101(C)(2). In short, the matter of party-opponent admissions is irrelevant to either the grand jury process or the remaining issues raised in this appeal, and the second assignment of error is overruled.

{¶ 17} For these reasons, the order of the Common Pleas Court of Marion County, Ohio, to quash the subpoena duces tecum is reversed, and the matter is remanded to that court for further proceedings in accordance with this opinion.

Judgment reversed
and cause remanded.

THOMAS F. BRYANT and WALTERS, JJ., concur.