[Cite as *State v. Brown*, 2014-Ohio-5456.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

        Appellee

v.

Michael R. Brown

        Appellant

Court of Appeals Nos. L-13-1105
L-13-1106

Trial Court Nos. CR0201301084
CR0201301269

**DECISION AND JUDGMENT**

Decided: December 12, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Jennifer Liptack-Wilson, Assistant Prosecuting Attorney,
for appellee.

Tim A. Dugan, for appellant.

* * * * *

**SINGER, J.**

**{¶ 1}** Appellant, Michael Brown, appeals from two May 3, 2013 judgments of the
Lucas County Court of Common Pleas, both convicting him of violating a civil protection
order, R.C. 2919.27(A)(1) and (B)(3).  For the reasons which follow, we affirm.

**{¶ 2}** Appellant was charged with violating a civil protection order on two separate occasions. The cases were consolidated for trial and appellant was convicted by a jury of both offenses. Appellant was sentenced to a 12-month term of imprisonment and an 11-month term of imprisonment, which were to be served consecutively. Appellant appealed and asserts the following assignments of error:

1) The state of Ohio failed to provide legally sufficient evidence to sustain a conviction of Violation of a Civil Protection Order, violating Appellant's right to due process.

2) The Trial Court committed plain error by not ensuring that the jury was fair and impartial.

3) Appellant received ineffective assistance of counsel as Trial Counsel failed to protect Appellant's right to a fair and impartial jury.

4) Appellant's convictions fell against the manifest weight of the evidence.

**{¶ 3}** The following evidence was submitted at trial. Christina Green obtained a temporary civil protection order against appellant in March 2011, and it was extended until March 4, 2013. The order prohibited appellant from harming, attempting to harm, threatening, stalking, or following Green. The order also prohibited appellant from causing or encouraging another to do any act prohibited by the order.

**{¶ 4}** Green testified at appellant's trial that he stalked her on December 3, 13, and 14 of 2012. She testified that on December 3, 2012, she observed appellant

2.

following her vehicle after she left her home for work. Appellant did not live near her and did not work downtown where she did. She authenticated a photograph taken by her employer's security camera evidencing that appellant's vehicle was parked outside her place of employment that morning. She reported the incident to the police two days later. On December 13, 2012, Green observed appellant drive by the fitness club where she was working out. Appellant parked his vehicle and then stood outside his vehicle and watched her through the windows. Green's mother also testified that she saw appellant at the center that afternoon. By the time police arrived, appellant had left the premises. After this incident, Green hired private investigators to follow appellant and photograph him as he followed Green. On December 14, 2014, Green saw appellant sitting alone and watching her while she was in a bar. At one point, appellant touched her as he passed by her. After about 15-20 minutes, Green saw appellant leave the bar with their son.

{¶ 5} After the last incident, Green learned from her supervisor that Kevin Stuart, an inmate at the correction facility where she worked, had private information about her. Green contacted Detective Kaminsky to investigate the matter.

{¶ 6} Two private investigators testified at trial. The first private investigator testified that he observed appellant enter the bar parking lot on December 14, 2014, after Green. Appellant circled the lot, and parked near Green's car. Appellant and his son entered the bar. By the time the investigator walked to the door to enter the bar, appellant and his son were exiting the bar. A second investigator testified she photographed appellant outside the bar. The first investigator attempted to follow appellant, but lost

3.

sight of appellant as he left the parking lot. The second investigator stood outside the bar and observed appellant park at a nearby shopping mall for ten minutes. Afterward, both investigators observed appellant move his car to park in a parking lot adjacent to the bar parking lot. Appellant exited his vehicle and walked to the edge of the bar lot and watched the front door of the bar for five-to-ten minutes. Afterward, appellant left the lot. The first investigator called the police, but by the time the police arrived, appellant had left the area.

{¶ 7} Kaminski testified that on December 19, 2012, he began to investigate a complaint against appellant because Green had complained about the civil protection order violation. Kaminski learned from the director of the Correctional Treatment Facility and Green that an inmate, Stuart, was willing to testify about a conversation he had with appellant while they were both in the treatment facility. Kaminski reviewed Stuart's signed statement that was written by an employee of the treatment facility for Stuart because he had trouble writing. Kaminski also interviewed Stuart in person. Kaminski verified that Stuart and appellant were together in the medical pod at the same time.

{¶ 8} Stuart testified at appellant's trial on April 10, 2013, that he was currently incarcerated at the Correction Center of Northwest Ohio until his four-year sentence for aggravated robbery would end on "April 12, 2012." Clearly, Stuart misspoke regarding the date of his release and meant "2013." He further testified that he was sent to the Correctional Treatment Facility during his term where he knew Christina Green worked.

4.

At some unidentified date, he was transferred to the Lucas County Jail medical unit because he needed 24-hour medical treatment. While he was in the medical unit, Stuart met appellant. The two conversed and appellant told Stuart personal information about Green because he believed he was in jail because of her. Appellant offered to pay Stuart to cause some kind of harm to Green, which would make appellant feel better. When Stuart returned to the Correction Treatment Facility, he first decided not to disclose the conversation to stay out of the matter, but later decided to tell someone to protect himself in case Green was harmed. Stuart told a supervisor about the conversation at some unidentified time.

{¶ 9} Appellant testified he had been found guilty of previously violating the civil protection order on July 5, 2011, and July 24, 2012, and was sentenced to 180 days of incarceration. Appellant admitted that he parked next to Green's place of employment on December 3, 2012, even though it was unnecessary for him to drive by the place to reach the unemployment office. He testified he was had been incarcerated since January 3, 2013, and therefore could not produce documentation that he had been at the unemployment office on December 3, 2012. Appellant denied being at the fitness center on December 13, 2012. He admitted to having been at the bar on December 14, 2012. He testified that he was there with his son to eat and play pool. He denied having been there to look for Green and denied having seen her that evening. Appellant was asked if he had been incarcerated with Stuart in "January, 2012," at the Lucas County Jail and he responded "yes."

5.

{¶ 10} In his first assignment of error, appellant argues that there was insufficient evidence to support his conviction for recklessly violating the civil protection order on or about January 11, 2013 (case No. CR0201301269).

{¶ 11} A challenge to the sufficiency of the evidence is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The standard for determining whether there is sufficient evidence to support a conviction is whether the evidence admitted at trial, "if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102, 684 N.E.2d 668 (1997), fn. 4, citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.E.2d 560 (1979). *Accord Thompkins*. Therefore, "[t]he verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997), citing *Jenks* at paragraph two of the syllabus. In determining whether the evidence is sufficient to support the conviction, the appellate court does not weigh the evidence nor assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978) and *State v. Willard*, 144 Ohio App.3d 767, 777-778, 761 N.E.2d 688 (10th Dist.2001). But, the court must view the

6.

evidence in the light most favorable to the prosecution. *Jenks, supra*. If the state "relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction[.]" so long as the jury is properly instructed as to the burden of proof, i.e., beyond a reasonable doubt. *Jenks* at paragraph one of the syllabus.

{¶ 12} R.C. 2919.27(A)(1) provides that "[n]o person shall recklessly violate the terms of * * * [a] protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code." Section (B)(3) provides that the offense is a felony of the fifth degree if there has been a prior conviction for the same offense.

{¶ 13} Appellant argues that the prosecution failed to present any evidence as to when appellant allegedly attempted to hire Kevin Stuart to physically assault his estranged girlfriend, Christina Green. The indictment stated that the crime occurred on January 11, 2013. Appellant testified that he saw Stuart in "January, 2012." However, in closing arguments the prosecution indicated that appellant saw Stuart on January 18, 2012, and the court, in its jury instructions, recited a date of January 11, 2013. Appellant argues that while the date was not an essential element of the crime, the crime had to have occurred after the civil protection order was instituted and had to have occurred after a prior violation before the court could enhance the level of offense.

7.

{¶ 14} We find that there was sufficient evidence that the violation occurred on or about "January 11, 2013" as charged in the indictment. While appellant agreed with the prosecutor that appellant had been incarcerated with Stuart in January "2012," the jury could reasonably concluded that the prosecutor and appellant both erred by stating "2012" since appellant also testified that he was incarcerated as of January 3, 2013. Appellant's first assignment of error is found not well-taken.

{¶ 15} In his second assignment of error, appellant argues that he was not convicted by a fair and impartial jury. He contends that the trial court failed to ensure that juror No. 11 could be fair and impartial after the juror informed the bailiff that he faintly recognized Green from high school when she testified, but not her name. Appellant asserts that the failure to question the witness further amounted to plain error since appellant did not object at trial to the presence of the juror.

{¶ 16} The trial court advised the prospective jurors that if there was any reason why they could not be fair and impartial, they should disclose such information. The court and the prosecution also emphasized the need for the jurors to be fair and impartial during the trial. Accordingly, when juror No. 11 vaguely recognized a witness for the prosecution when she testified, the juror immediately reported to the bailiff that the witness was someone who had attended the same high school as the juror fifteen years earlier. The bailiff immediately presented the information to the court. A discussion ensued at the bench and the prosecutor inquired of defense counsel whether he would object. Defense counsel indicated that he was fine with the juror serving on the trial.

8.

{¶ 17} Two types of error can occur at trial, waiver and forfeiture. The distinction between the two types of errors is relevant for appellate review because only forfeited error, not waived error, is reviewable under the plain error analysis. *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 22-23. "Waiver is the intentional relinquishment or abandonment of a right." *Id.* at ¶ 23. "[F]orfeiture is a failure to preserve an objection." *Id.* While the courts continue to use the terms interchangeably, the concepts which they represent are uniquely different. The purpose of Crim.R. 52 is to empower courts with limited power to correct errors that occurred during trial. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 9. The rule operates as follows:

> If the defendant failed to raise an error affecting substantial rights at trial, an appellate court reviews the error under the plain-error standard in Crim.R. 52(B). * * * if the defendant has objected to an error in the trial court, an appellate court reviews the error under the "harmless error" standard in Crim.R. 52(A)—"a standard significantly more favorable to the defendant." *Id*. at ¶ 14-15.

{¶ 18} In the case before us, appellant specifically was asked and waived his right to object to juror No. 11 serving on the jury. Therefore, Crim.R. 52 is not applicable. However, appellant asserts that a fundamental structural error occurred. But structural error has always been tied to Crim.R. 52. We find by waiving his right to raise this issue

on appeal, he has also waived structural error relating to this issue.  *State v. Thompson*, 2d Dist. Montgomery No. 22984, 2010-Ohio-1680, 23010 WL 1511496, *23 (Fain, J., dissenting).

{¶ 19} Even if we did consider appellant's structural error argument, we find it lacks merit.  Appellant argues that pursuant to *State v. Betz*, 6th Dist. Wood No. WD-12-050, 2014-Ohio-55, the trial court in this case should have held an evidentiary hearing to ensure that the trial was fair and impartial.  We disagree.

{¶ 20} First, *Betz* dealt with jury tampering by intimidating jurors, not general bias.  Second, even in *Betz* we held there must be a colorable claim of jury bias before the court has a duty to investigate the matter in order to exercise its sound discretion and determine whether misconduct occurred and whether it had a prejudicial effect on the trial which would require a new trial.  *United States v. Olano*, 507 U.S. 725, 739, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954).  In *Betz*, the fact that the intimidation occurred gave rise to a colorable claim of bias and the need for a hearing to determine the impact upon the jury.  In the case before us, there is no obvious indication that a juror would be influenced by the presence of a witness he recognized from having attended the same high school. The burden remained on appellant to present a colorable claim of jury bias to warrant a hearing on the matter.  *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982) and *Olano* at 739.

10.

{¶ 21} When juror No. 11 determined that he knew the witness, he immediately disclosed that fact to the court. He did not conceal the fact of his recognition or give false testimony during voir dire. The juror told the bailiff of his recognition of the witness's face from a past connection. No additional evidence of a connection between the juror and witness was disclosed. Based on these facts, it is unreasonable to infer any further connection between the juror and witness. No colorable claim of misconduct was presented and no evidence of prejudice occurred.

{¶ 22} We find appellant's second assignment of error not well-taken.

{¶ 23} Appellant also asserts in his third assignment of error that his counsel rendered ineffective assistance by failing to inquire further about any potential jury bias. To establish a claim of ineffective assistance of appointed counsel, the defendant must show that his counsel's representation "fell below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance." *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 24} The mere fact that a juror knows a witness in the trial does not disqualify him or her from serving. *State v. Thomas*, 80 Ohio App.3d 452, 455, 609 N.E.2d 601 (3d Dist.1992). From the conversation that took place, it is clear that defense counsel did not believe any bias existed by the mere knowledge of the identity of a witness. The determination of whether to inquire further of the juror during voir dire and/or retain him on the jury is an intricate part of the entire trial strategy and cannot be subjected to review. *State v. Hess*, 4th Dist. Washington No. 13CA15, 2014-Ohio-3193, ¶ 33-36, and

11.

*State v. Monford*, 190 Ohio App.3d 35, 2010-Ohio-4732, 940 N.E.2d 634, ¶ 94. Furthermore, appellant has failed to demonstrate on appeal that any actual bias or even that a colorable claim of bias existed.

{¶ 25} Therefore, we find appellant's third assignment of error not well-taken.

{¶ 26} In his fourth assignment of error, appellant argues that his convictions were contrary to the manifest weight of the evidence.

{¶ 27} Even when there is sufficient evidence to support the verdict, a court of appeals may decide that the verdict is against the weight of the evidence. *Thompkins*, 78 Ohio St.3d at paragraph two of the syllabus, 678 N.E.2d 541. When weighing the evidence, the court of appeals must consider whether the evidence in a case is conflicting or where reasonable minds might differ as to the inferences to be drawn from it, consider the weight of the evidence, and consider the credibility of the witnesses to determine if the jury clearly "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983) and *Smith,* 80 Ohio St.3d at 114, 684 N.Ed.2d 668. This determination involves a discretionary power to grant a new trial which should be "invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant." *State v. Gleason*, 110 Ohio App.3d 240, 244, 673 N.E.2d 985 (9th Dist.1996).

{¶ 28} With respect to the charge of recklessly violating the civil protection order on or about January 11, 2013 (case No. CR0201301269), appellant argues that the

12.

conviction was contrary to the manifest weight of the evidence because it was based solely on the testimony of Stuart. With respect to the charge of recklessly violating the civil protection order December 3 through 14, 2012 (case No. CR0201301084), appellant argues the bulk of the evidence consisted of the events at the bar which is a public place and that appellant had legitimate reasons for being there as well as downtown.

{¶ 29} For both convictions, appellant argues only that the jury lost its way in evaluating the conflicting evidence that was presented. We disagree. When all of the evidence is considered as a whole, we find that the jury did not lose its way in evaluating the evidence and drawing inferences from the direct evidence. Therefore, we find that appellant's convictions were not contrary to the manifest weight of the evidence. Appellant's fourth assignment of error is not well-taken.

{¶ 30} Having found that the trial court did not commit error prejudicial to appellant, the judgments of the Lucas County Court of Common Pleas are affirmed. Appellant is ordered to pay the court costs of this appeal pursuant to App.R. 24.

Judgments affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                    _____
                                                          JUDGE
Arlene Singer, J.                           

James D. Jensen, J.                         _____
CONCUR.                                                   JUDGE

                                            _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.